STATE OF NEBRASKA, APPELLEE, V. PATRICK A. PECHA, APPELLANT.
407 N.W.2d 760

Filed June 19, 1987.   No. 86-675.

Thomas M. Kenney, Douglas County Public Defender, and Victor Gutman, for appellant.

Robert M. Spire, Attorney General, and Laura L. Freppel, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This is an appeal from the district court for Douglas County, Nebraska. The appellant, Patrick A. Pecha, was charged with the offense of unlawfully and knowingly or intentionally possessing a controlled substance, to wit, methamphetamine, in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1985). This is a Class IV felony. Following the trial, Pecha was convicted of the offense and sentenced to 1 year's imprisonment. He now appeals to this court, maintaining that the district court erred in

not sustaining his motion to suppress certain evidence obtained by what Pecha maintains was an invalid search warrant. We have reviewed the record and believe that Pecha is correct in his assertion. For that reason the judgment of conviction must be reversed and set aside.

The record discloses that on April 2, 1986, Officer Dianna Clark of the Omaha Police Division narcotics unit filed an affidavit and application for issuance of a search warrant. The affidavit provided:

Within the last 24 hours Omaha Police Narcotics Officer Dianna L. Clark recevied [sic] information from a confidential reliable source concerning the drug activities of a party identified only as LNU, Steve residing at 1721 South 28th Street. The confidential reliable source has proven his/her reliability to the members of the Omaha Police Narcoitcs [sic] Unit by making controlled purchases of marijuana, LSD, and assorted pills. The controlled purchases of marijuana, LSD, were turned into [sic] Chemist William Ihm of the Lutheran Medical Center and test revealed that these items were in fact marijuana and LSD. Henceforth this confidential source shall be referred to as Source #1.

In the last 24 hours Affiant Officer had conversation with Source #1 concerning the drug activity of a party identified as LNU, Steve a white male, 22-23 years of age, 5'5, 150-155 lbs., with brown hair, and a beard residing at 1721 South 28th Street. At this time Source #1 advised Affiant Officer that within the last 48 hours Source #1 was inside of 1721 South 28th and observed LNU, Steve in possession of quantity of methamphetamine. Source #1 is aware of what methamphetamine looks like it's [sic] appearance and how it would be packaged for street sale. Source #1 also advised Affiant Officer that LNU, Steve resides at 1721 South 28th Street with a female known as MOHR, Edna.

In checking the Omaha Police computer Officer Dianna L. Clark located a [sic] Edna MOHR a white female, DOB/10-17-48, 5'5, 120 lbs., with brown hair, and brown eyes using the address of 1721 South 28th

Street, OPD#081561, Nebraska Drivers license #EO1-461086, SS#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.

Based on the foregoing information Affiant Officer has reason to believe and does believe that MOHR, Edna and LNU, Steve are involved in the distribution of controlled substances in the Omaha Nebraska area. Affiant Officer Dianna Clark further believes that LNU, Steve and MOHR, Edna are presently in possession of a quantity of methamphetamine and that if officers of the Omaha Police Narcotics Unit are authorized to execute a Search Warrant that officers will obtain enough evidence to arrest LNU, Steve and MOHR, Edna for the offense of Possession of a Controlled Substance and Possession of a Controlled Substance With Intent to Deliver which are violations against the Statutes of the State of Nebraska.

Therefore it is requested that the court enter an order authorizing the officers of the Omaha Police Narcotics Unit to execute a Search Warrant on the residence of 1721 South 28th Street located in Omaha Douglas County Nebraska for the purpose of gathering evidence.

Based upon the affidavit, the county court for Douglas County issued a search warrant providing that there was probable cause to believe that "methamphetamine it's [sic] derivatives, and administrating instruments, either homemade or manufactured," as well as "[m]onies or records pertaining to an illegal narcotics operation and distribution," and "[r]ecords identifying those individuals residing at 1721 South 28th Street Omaha Douglas County Nebraska," were concealed on the following:

[T]he premises located at 1721 South 28th Street a blue two story wood frame single family dwelling, AND/OR the person of MOHR, Edna, I., white female DOB/10-17-48, 5'5, 120 lbs., brown hair, brown eyes, OPD#081561, and LNU, Steve, white male, 22-23 years of age, 5'5, 150-155 lbs., with brown hair and a beard, and John and/or Jane DOE, who resides or is in control of the afore described premises.

The warrant authorized the search of the premises located on South 28th Street as well as "MOHR, Edna," and "LNU,

Steve," and authorized the seizure of the property described in the warrant.

At approximately 5 p.m. on April 2, 1986, seven or eight police officers went to 1721 South 28th Street to execute the warrant. They parked south of the residence and ran on foot. As they approached the residence, they observed a male who fit the description of the male identified in the search warrant as "LNU, Steve." He was later identified as Stephen Pecha, a brother of the appellant. Stephen Pecha was working under the hood of a car parked 20 feet in front of the residence. A second man, who was later identified as appellant, had been near the car when the officers began approaching the residence, but was walking away from it and was on the front porch by the time that the officers arrived.

Officer Kevin Donlan patted down Stephen Pecha as he stood by the car. The officer said that he was looking for weapons, but he did not find any. He also advised Stephen Pecha that they had a search warrant for the residence. A pat-down search of the appellant by Officer Greg Marchio at the same time did not yield any weapons, either. Other officers entered from the rear of the residence and gathered together all of the parties who were inside, consisting of Edna Mohr and several children. Officers Donlan and Marchio then escorted the Pecha brothers into the residence.

The officers then gathered everyone into the living room and advised them that they had a search warrant. While uniformed patrol car officers watched the parties, narcotics unit officers searched the residence. Officer Donlan searched the dining and living rooms and seized drug paraphernalia, including snorting-tube straws, razor blades, and mirrors, which he found in the middle of the dining room table.

Officer Donlan then searched Stephen Pecha thoroughly, but found nothing. Officer Clark searched Edna Mohr. Then Officer Donlan searched the appellant. He found in appellant's pants pocket a folded piece of paper wrapped around a little baggie containing a white powdery substance, which was later identified by William Ihm, a chemist at Lutheran Medical Center, as 40 milligrams of methamphetamine, a Schedule II drug. The piece of paper was stationery from a business where

Mohr once worked. No evidence was introduced to establish that the drug found on appellant came from the same "group" as traces of drug found on the paraphernalia located on the premises.

Prior to trial, Pecha moved to suppress the physical evidence obtained as a result of the search. At the hearing on the motion, the State called Officer Donlan, who testified about the execution of the warrant. Donlan testified at trial that the names "John and/or Jane DOE" appeared on the search warrant as "a catchall for anybody that might be inside the residence." The district court overruled the motion to suppress, and the case proceeded to trial. When appellant objected to the introduction of evidence or renewed his motion during trial, the court either indicated it was making "the same ruling," or simply overruled the motion or objection, and the evidence was admitted.

As part of his defense, Pecha attempted to show that the search of his person was outside the scope of the warrant because he was not a person who resided at or was in control of the premises at 1721 South 28th Street. Pecha testified that he lived next door or across the street and that he hardly ever visited the residence occupied by his brother and Mohr. On cross-examination, Officer Donlan admitted that he had found nothing, at the residence, that was identified as belonging to Patrick Pecha.

The issue presented to us by this appeal is one of first impression in this jurisdiction and concerns the question of the legality of the "John Doe warrant." While we have not specifically passed upon this issue, several other courts have, and their decisions are helpful in our deciding this matter. As we begin our analysis it is important for us to keep in mind the provisions of the fourth amendment to the U.S. Constitution as well as the provisions of Neb. Rev. Stat. § 29-814.04 (Reissue 1985).

The fourth amendment to the U.S. Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." To the same effect, § 29-814.04 provides in part that "[i]f the

magistrate or judge is satisfied that probable cause exists for the issuance of a search warrant . . . the magistrate or judge shall issue the warrant which shall *identify the person or place to be searched and the person or property to be seized*." (Emphasis supplied.) The reasons underlying the language of both the fourth amendment to the U.S. Constitution and § 29-814.04 are obvious to anyone familiar with the early history of our country. Both the framers of our Constitution and its subsequent Bill of Rights and the Legislature of the State of Nebraska were attempting to restrict the evils associated with the use of the general warrants known in England and the detested writs of assistance familiar in the Colonies. The reason the government was prohibited from indiscriminately searching persons and places was observed by the New York Court of Appeals in *People v Nieves*, 36 N.Y.2d 396, 330 N.E.2d 26, 369 N.Y.S.2d 50 (1975), where it said:

> Particularity is required in order that the executing officer can reasonably ascertain and identify . . . the persons or places authorized to be searched and the things authorized to be seized. To protect the right of privacy from arbitrary police intrusion, the "core" of the Fourth Amendment . . . nothing should be left to the discretion of the searcher in executing the warrant . . . .

*Id*. at 401, 330 N.E.2d at 31, 369 N.Y.S.2d at 57.

That is not to say, however, that under no circumstance may a warrant be issued for one whom the police cannot identify by name in advance.

> What will amount to forbidden generality, or, to put it another way, insufficient particularity in a warrant necessarily depends upon the facts and circumstances of each case. Thus, to say that general warrants are outlawed by the Federal and State Constitutions merely initiates the inquiry. The same may be said of their expressed requirement of probable cause and their ultimate mandate of reasonableness. Like "particularity", these depend upon the facts and circumstances.

*Id*. at 402, 330 N.E.2d at 32, 369 N.Y.S.2d at 58. See, also, *State v. Gilreath*, 215 Neb. 466, 339 N.W.2d 288 (1983); *State v. Abraham*, 218 Neb. 475, 356 N.W.2d 877 (1984).

Two Minnesota decisions, though reaching opposite results, point out the factors that should be considered. In the case of *State v. Hinkel*, 365 N.W.2d 774 (Minn. 1985), a search warrant was issued to permit police officers to search an "afterhours establishment." The warrant specifically authorized a search of the house and "all persons on the premises." In upholding the validity of the warrant authorizing the search of "all persons on the premises," the Minnesota court said:

> There must be a sufficient nexus between the criminal activity, the place of the activity, and the persons in the place to show probable cause. This nexus has been described as "whether there is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person."

*Id.* at 776.

The court then concluded that anyone who was in an "afterhours establishment" was likely to be a person who was engaging in illegal activity, and therefore innocent persons were not likely to be searched.

In the second case, *State v. Robinson*, 371 N.W.2d 624 (Minn. App. 1985), the warrant authorized the search of a licensed bar and "all persons on the premises" for drugs and evidence of drug-related activity. In determining that a warrant authorizing the search of "all persons" in a licensed bar was invalid, the Minnesota Court of Appeals, after first citing *State v. Hinkel, supra*, said at 626:

> In this matter, the police were dealing with the patrons of a licensed bar operating during normal business hours. There was little likelihood that everyone in the bar on a Friday night would be involved in criminal activity. The two controlled buys by unidentified informants and other allegations in the police affidavit did not demonstrate a sufficient nexus between the illegal activity and the 50 to 80 patrons in the bar that night. The "all persons" warrant in this matter was an illegal general warrant.

We believe an examination of the facts in the instant case

shows that they fail to satisfy the nexus requirement, and instead establishes that the warrant was an invalid general warrant.

Nothing in the affidavit filed by Officer Clark even made reference to a belief that there were or would be persons other than Edna Mohr and Stephen Pecha on the premises who were or might be involved in illegal activity. No evidence was introduced to show that there was anyone else residing at or in control of the premises other than Edna Mohr and Stephen Pecha. Further, Officer Donlan frankly admitted that the inclusion of the phrase "John and/or Jane DOE" was intended merely as a catchall. It is this very catchall which both the fourth amendment to the U.S. Constitution and the provisions of § 29-814.04 seek to prohibit.

If indeed the premises are of a type that is likely to be frequented only by persons engaged in illegal activity, or the affiant has sufficient information to generally describe individuals who are likely to be involved in illegal activity and who should be searched, a warrant of that nature may be valid. Where, as here, the inclusion of the catchall phrase "John and/or Jane DOE" is not based upon any probable cause, and the premises to be searched is acknowledged to be a residence at which both persons engaging in illegal activity and persons engaging in legal activity might be found, we cannot condone such a warrant. Were we to do so we would, in effect, eviscerate the protections intended by both the fourth amendment to the U.S. Constitution and the provisions of § 29-814.04. That we are unwilling to do.

The State further argues that even if the warrant was illegally issued, nevertheless, the conviction should be affirmed on the basis that the search was made "in good faith" and is therefore within an exception to the exclusionary rule. It is true that in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), the U.S. Supreme Court held that evidence obtained under an illegal warrant upon which police officers were acting in good faith should nevertheless be admitted in evidence. However, the Supreme Court further stated:

> The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his

judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, [99 S. Ct. 2319, 60 L. Ed. 2d 920] (1979); in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." . . . Finally . . . a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

468 U.S. at 923.

We believe that the facts in this case fall squarely within the limitations imposed in *United States v. Leon*, and the good-faith exception created in that case is not applicable in the instant case. The defect in this warrant was apparent on its face.

For that reason, we find that the motion to suppress filed by Pecha should have been sustained and the evidence suppressed. Absent that evidence, the record is devoid of any further evidence sufficient to convict Pecha of the charge. For that reason the conviction and sentence must be set aside and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.