STATE OF NEBRASKA, APPELLEE, V.
TERRY W. LYTLE, APPELLANT.
587 N.W. 2d 665

Filed December 11, 1998.   No. S-97-1221.

Barbara Thielen, of Fabian & Thielen, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Search warrants authorizing searches of appellant Terry W. Lytle's home and business were issued solely on the basis of a tip provided by an anonymous informant using the "Crime-stoppers" program. Lytle filed a motion to suppress evidence

seized from his home and business pursuant to the search warrants. The trial court denied Lytle's motion to suppress, finding that the magistrate's determination of probable cause was correct. The question presented is whether a tip provided by an anonymous informant using the Crimestoppers program, which is unsupported by other corroborating evidence, is sufficient to support a finding of probable cause for the purpose of issuing a search warrant. Specifically, is such an informant a "citizen informant," such that she/he is presumptively reliable? We conclude that anonymous informants using the Crimestoppers program are not citizen informants and that the search warrant in the instant case was not supported by probable cause. We reverse, and remand with directions to dismiss.

## BACKGROUND

Officer Robert C. Laney received a telephone call from an anonymous person who stated that Lytle was storing stolen Harley-Davidson motorcycles in the garage at his residence and using stolen motorcycle parts at his shop, One-Stop Motorcycles. The anonymous person also indicated that there would be some Harley-Davidsons that properly belonged to Lytle stored with the stolen ones. The anonymous person indicated that she/he had called before and nothing had been done and that she/he wanted something done. She/he indicated that the stolen motorcycles had been in Lytle's garage for 8 months. The anonymous person gave Laney no information as to how she/he was aware of these facts. Laney suggested that the anonymous person call the Crimestoppers program.

Another anonymous person, believed to be the same person that called Laney, later called Sgt. William Connelly through Crimestoppers. This anonymous person reiterated the information that had been given to Laney by the previous anonymous person, with the addition of some detail concerning the types of Harley-Davidsons stored at the two locations.

Laney drafted an affidavit and application for issuance of a search warrant based on the above telephone calls. The affidavit and application stated:

> The complaint and affidavit of Officer Robert C. Laney #1206, on this 19 day of SEPTEMBER, 1996, who, being first duly sworn, upon oath says:

That he has just and reasonable grounds to believe, and does believe that there is concealed or kept as hereinafter described, the following property, to wit:

A 1992 Or 93 Maroon or Brown HARLEY DAVIDSON with silver panels and gold pinstripes and full touring equipment believed to be stolen.

A 1992 or 93 Silver HARLEY DAVIDSON FAT BOY thought to have been stolen in late summer of [sic] fall of 1995.

A 1985 to 90 Black HARLEY DAVIDSON Sportster thought to have been stolen out of state along with other stolen motorcycles and motorcycle parts[,] false identification tags, titles, numbers, and/or implements, tools, and materials for fabricating same.

That said property is concealed or kept in, on, or about the following described places or person(s), to wit:

#1 6309 Boyd St. a tan single story family dwelling with the front door facing to the north with the numbers 6309 to the left of the front door and a detached single car garage with lean on addition built on to the rear of the garage. The garage is sitting to the south east of the house.

#2 1125 NORTHWEST RADIAL HIGHWAY, OMAHA, DOUGLAS COUNTY NEBRASKA, doing business as ONE STOP MOTORCYCLE SHOP. The business name is painted on a sign which is hung on the front door of 1125 NORTHWEST RADIAL HIGHWAY. The building is a single garage tan in color with a stucco finish. The numbers 1125 appear on the left side of the front door[.] To the left or North of the front door is a roll up garage door facing west toward NORTHWEST RADIAL HIGHWAY. The address 1125 is adjoined to a two story tan stucco building which has the address of 1123 NORTHWEST RADIAL HIGHWAY.

That said property is under the control or custody of LYTLE,Terry, W.
W/M, DOB 5-12-50
5'10' 150 Lbs.
Data # . . .
SSN # . . .

That the following are the grounds for issuance of a search warrant for said property and the reasons for his belief to wit:

Omaha Police Sgt. CONNELLY #832 took a crime stoppers tip from an anonymous source who said they [sic] had personal knowledge that within the past forty eight hours, concealed in an addition to a detached garage to the rear of 6309 Boyd St, Omaha Douglas County NE were several stolen HARLEY DAVIDSON Motorcycles. The caller said that a party by the name of LYTLE, TERRY who lives at that address has stored the stolen HARLEY DAVIDSON MOTORCYCLES at that location under a large blue tarp. The caller said that LYTLE pays unknown parties up to two thousand dollars for each HARLEY DAVIDSON MOTORCYCLE that they steal for him. The caller went on to say that LYTLE uses these motorcycles for parts at LYTLES motorcycle shop which is ONE-STOP MOTORCYCLE PARTS at 1125 NORTHWEST RADIAL HIGHWAY. The caller also said that LYTLE has been doing this for several years.

The Omaha Police Department Auto Theft Unit has numberous [sic] unrecovered stolen Harley Davidson Motorcycles on file.

The Omaha Police Division, in 1982, began a Crime Stoppers Program. This program is a [sic] one by which the Omaha Police Division obtains information from the public about various Crimes and Fugitives in an effort to solve crimes reported to the Police, apprehend Fugitives, and recover stolen property. Since the inception of this program in 1982 over 1600 felony arrests have been made which cleared over 3155 reported crimes with a conviction rate of over 90% as a result of Omaha Police division Crime Stoppers tips. The value of property recovered as a result of tips is in excess of $2,811,427. Callers are promised anonymity and may be granted a reward if the information proves to be true and accurate and leads to the arrest and conviction of perpatrators [sic] and/or the recovery of stolen property or other contraband.

Affiant officer did confirm through the 1996 Polk City directory that LYTLE, Terry is the listed resident at 6309 Boyd St., Omaha, Douglas County NE. Affiant officer also confirmed through M.U.D. that LYTLE, Terry is the party being billed for gas and water services at 1125 Northwest Radial Highway.

WHEREFORE, he prays that a Search Warrant may be issued according to law.

The county court issued two search warrants. The first authorized the search of Lytle's shop and the second authorized the search of his home.

Both Lytle's shop and residence were simultaneously searched pursuant to the warrants. Officer Charles J. Venditte was involved in the search of Lytle's shop. When Venditte arrived, he asked Lytle if he had any weapons. Lytle stated that he did and told Venditte where the weapon was located.

Laney was involved in the search of Lytle's residence. Lytle, who was at the shop when the search began, was brought to his residence while the garage was searched. When Lytle arrived at his residence, Laney asked him whether there was anything in the house that would be of any danger to the police officers. Lytle stated that there were two loaded guns in a dresser by his bed. Lytle then showed Laney the location of the guns. The weapons at both locations and some motorcycles were seized.

Lytle was charged with one count of theft by receiving stolen property and three counts of possession of a deadly weapon by a felon. Lytle filed a motion to suppress the evidence seized during the search of his home and shop and a motion to dismiss the three felon in possession of a deadly weapon counts, both of which were denied. The jury found Lytle guilty on all three felon in possession of a deadly weapon charges, and he was sentenced to probation. However, the jury could not reach a verdict on the theft charge, and thus, the trial court declared a mistrial thereon.

## ASSIGNMENTS OF ERROR

Lytle contends that the trial court erred in (1) failing to grant his motion to suppress and admitting evidence at trial which was obtained in violation of his constitutional rights to be free

from unreasonable search and seizure; (2) failing to grant his pretrial motion to dismiss the three felon in possession of a deadly weapon counts, which was based upon the plenary restoration of civil rights; and (3) granting the State's motion in limine and excluding at trial testimony and evidence regarding the restoration of Lytle's civil rights.

## SCOPE OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998).

A search warrant, to be valid, must be supported by an affidavit establishing probable cause, or reasonable suspicion founded upon articulable facts. *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993). In evaluating probable cause for the issuance of a search warrant, a magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before the magistrate, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994), *overruled on other grounds, State v. Burlison, ante* p. 190, 583 N.W.2d 31 (1998). The duty of the reviewing court is to ensure that the magistrate issuing a search warrant had a substantial basis for determining that probable cause existed. *Id.*

## ANALYSIS

Lytle argues that the trial court erred in failing to suppress the evidence seized during the searches of his residence and business because the affidavit did not establish the basis of the informant's knowledge of criminal activity or that the anonymous informant was reliable.

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *State v. Grimes, supra.* An affidavit in support of the issuance of a search warrant must affirmatively set forth the circumstances from which the status of the informant can reasonably be inferred. *Id.* Moreover, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit underlying a search warrant. *Id.*; *State v. Morrison, supra.*

Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Grimes, supra.*

It is clear that there is nothing in the affidavit indicating that the informant in the instant case had given reliable information in the past or that the informant's statement was against his or her penal interest. Likewise, the police officers did not conduct an independent investigation establishing the informant's reliability. See *id.* Thus, the question is whether the informant was a citizen informant.

The status of citizen informant cannot attach unless the affidavit used to obtain a search warrant *affirmatively* sets forth the circumstances from which the existence of the status can reasonably be inferred. *Id.*; *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992). When considering the sufficiency of probable cause based on information supplied by an informant, it is important to distinguish the police tipster, who acts for money, leniency, or some other selfish purpose, from the citizen informer, whose only motive is to help law officers in the suppression of crime. *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d

83 (1996). Unlike the professional informant, the citizen informant is *without motive* to exaggerate, falsify, or distort the facts to serve his or her own ends. *Id.* A citizen informant is a citizen who purports to have been the witness of a crime who is motivated by good citizenship and acts *openly* in aid of law enforcement. *Id.*

Relying on *Detweiler*, the State argues that an anonymous caller using the Crimestoppers program who is capable of identifying certain motorcycles by year, color, and model, such as the informant in the instant case, is reliable.

In *State v. Detweiler, supra*, a confidential informant told the police that a friend had taken photographs inside the Detweiler residence of an elaborate marijuana-growing operation. The police told the confidential informant to tell the friend to give the photographs to the police and to make an anonymous report regarding the photographs to Crimestoppers. The police later received the photographs and an anonymous telephone call from a person who acknowledged sending the photographs and requested a Crimestoppers identification number. The anonymous person subsequently made another telephone call to Crimestoppers, again acknowledging the photographs and stating that they were taken in an upstairs room of the Detweiler residence. The caller had also observed many cars at, and different people going in and out of, the Detweiler residence.

In analyzing whether the caller was a citizen informant, the *Detweiler* court first noted that a tipster may be a citizen informant even though the tipster remained anonymous. We stated that an anonymous tipster's explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles the tip to greater weight than might otherwise be the case. We noted that the caller made an anonymous report to Crimestoppers, claiming to have taken photographs of a crime in progress; had sent those photographs to the police; and then had verified the photographs' contents. We stated that there was "no evidence that the caller had any selfish motivation for working with the police, such as promises of leniency or financial benefit," and that there was "no indication that the caller had any incentive to exaggerate the information made available to [the police] in pursuit of personal ends." *Id.*

at 493, 544 N.W.2d at 89. We stated that there was a "significant basis," *id.*, for finding that the anonymous caller was a citizen informant, but did not so hold. Rather, we held that under the "totality of the circumstances, probable cause existed to justify the issuance of the search warrant." *Id.* at 493, 544 N.W.2d at 90.

Lytle relies on this court's analysis in *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992), to support his contention that the affidavit did not affirmatively indicate that the informant in the instant case was a citizen informant.

In *Utterback*, the affidavit set forth information indicating that an anonymous informant had told the police that a certain "Randy," living at a certain residence, had sold the informant marijuana and that the informant had observed the sale of illegal drugs at the residence. The informant also had been in the residence within the last 5 days and had seen a large quantity of marijuana, along with lesser amounts of hashish, cocaine, LSD, and PCP. The informant had also observed and personally inspected an AK-47 assault rifle and an Uzi submachine gun at the residence, along with other weapons. The affidavit stated that the informant was neither a paid nor a habitual informant and that the informant's physical description of "Randy" matched the physical description of Randall Utterback, an individual documented in police files.

This court held that there was nothing in the affidavit "even hinting that the informant was 'motivated by good citizenship.'" *Id.* at 988, 485 N.W.2d at 768.

This court's holding in *Utterback* indicates that the fact that an anonymous tipster is not paid for information, in and of itself, does not affirmatively show that the tipster is a citizen informant. *Utterback* also held that a tip from an anonymous caller who is not a citizen informant detailing a crime in progress, absent some other corroborating information, is insufficient to support a finding of probable cause to support the issuance of a warrant.

Our holding in *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996), is consistent with that in *State v. Utterback, supra.* *Detweiler* did not hold that informants using the Crimestoppers program are citizen informants. Rather, the fact that the tipster

was an anonymous informant using the Crimestoppers program was but one element of the totality of the circumstances indicating that the informant was sufficiently reliable. In *Detweiler*, unlike *Utterback*, there were additional circumstances beyond the fact that the tipster was an anonymous informant using the Crimestoppers program. These circumstances indicated that the informant and the information provided thereby was reliable.

The Montana Supreme Court has addressed the reliability of an anonymous informant using the Crimestoppers program. See *State v. Rinehart*, 262 Mont. 204, 864 P.2d 1219 (1993). In *Rinehart*, the court stated:

> The anonymous Crimestoppers' tip, by itself, is not adequate to support probable cause *without further investigation* to verify or corroborate the information contained in the tip. . . . This does not mean, however, that the anonymous tip has absolutely no probative value in the probable cause determination. Factors which have little probative value on their own can still provide a basis for a determination of substantial evidence to conclude probable cause existed to issue a search warrant when such factors are considered in combination with other information under the totality of the circumstances test.

(Citations omitted.) *Id.* at 211, 864 P.2d at 1223. We agree with this analysis.

In the instant case, the only evidence in the affidavit which tended to show that the anonymous tipster was a citizen informant, or was otherwise reliable, was the fact that the tipster used the Crimestoppers program. Although that fact may be a factor tending to support a finding of probable cause, it is not enough, in and of itself, to render a tipster a citizen informant. See, *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *State v. Detweiler, supra*. The fact that a tipster uses the Crimestoppers program is likewise not enough, in and of itself, to otherwise support a finding of probable cause. See *State v. Rinehart, supra*.

Indeed, the affidavit stated that persons using the Crimestoppers program "may be granted a reward if the information proves to be true and accurate." That fact indicates that such an informant may be motivated by money, rather than solely by

"good citizenship." See *State v. Detweiler, supra*. For example, someone who has only the barest suspicion of criminal activity would not likely implicate another person in a crime. Such would not be "good citizenship." However, when presented with the opportunity for reward, such speculation may prompt a person to make a report. If the suspicion turns out to be incorrect, the anonymous informant is not harmed. However, if the suspicion is correct, the anonymous informant will likely be paid. Thus, such an informant would have a " ' " 'motive to exaggerate, falsify or distort the facts to serve his own ends.' " ' " *Id*. at 492, 544 N.W.2d at 89.

Based on the foregoing analysis, we conclude that the anonymous informant in the instant case was not a citizen informant and that the affidavit did not otherwise establish that the informant was reliable. "When it is not established that an informant is reliable, a search warrant issued upon information supplied by such unreliable source is invalid." *State v. Utterback*, 240 Neb. 981, 996, 485 N.W.2d 760, 773 (1992). Accordingly, Lytle's suppression motion should have been granted and the evidence suppressed. Under the totality of the circumstances, "[t]he magistrate would have no way of ascertaining whether this tip was rumor, speculation, vendetta, reprisal, or gossip." *State v. Valley*, 252 Mont. 489, 494, 830 P.2d 1255, 1258 (1992).

Our conclusion does not mean that anonymous tips obtained through the Crimestoppers program have no value. It is clear that information received from such a program can be a useful tool for law enforcement. But, standing alone, without corroboration of details by law enforcement, the information gleaned from such an informant is insufficient to establish the informant's reliability or establish probable cause. In this regard, we note that the mere confirmation of Lytle's address and verification of utilities was insufficient to establish, along with the tip, probable cause to issue the search warrant. See *State v. Utterback, supra* (holding police verification of defendant's address, car registration, utilities, and physical description are insufficient to corroborate informant's information for purpose of issuing warrant).

Because we have already concluded that the affidavit failed to establish the informant's reliability and that Lytle's motion to

suppress should have been granted, we do not address Lytle's remaining assignments of error.

## CONCLUSION

The affidavit in support of the issuance of the search warrant was insufficient to establish the reliability of the informant and, therefore, insufficient to establish probable cause. Accordingly, the evidence seized pursuant to the search warrant should have been suppressed. Moreover, because the illegally seized evidence was the only evidence as to Lytle's guilt, this cause is remanded with directions to vacate Lytle's convictions and dismiss the charges against him.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.