STATE OF NEBRASKA, APPELLEE, V.
PAMELA A. EDMONSON, APPELLANT.
598 N.W.2d 450

Filed August 13, 1999.    No. S-98-937.

Susan M. Cook and Jeffery R. Kirkpatrick, of Kelley, Lehan & Hall, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Raffety for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Pamela A. Edmonson, was convicted of one count of unlawful possession with intent to deliver a controlled substance. She appeals, asserting that her residence at 2616 Burdette Street was unconstitutionally searched and that the evidence obtained in the search should have been suppressed.

The warrant authorizing the search of Edmonson's residence was issued on the basis of an affidavit that was insufficient to establish probable cause. The police submitted another affidavit after the warrant was issued which, when considered with the original affidavit, would have been sufficient to support a finding of probable cause. Nonetheless, the judge did not issue a new warrant or amend the previously issued warrant. We conclude that the judge erred in failing to do so and that the Fourth Amendment rights of Edmonson were accordingly violated. However, we also conclude that the police acted in objectively reasonable good faith in executing the warrant and, therefore, that the evidence seized pursuant to the warrant need not be suppressed. We affirm.

## I. BACKGROUND

On February 4, 1998, Omaha police officers Stephen W. Venteicher and Jerry Martinez submitted an affidavit and application for a search warrant to a Douglas County judge. The affidavit stated:

That the Affiant has just and reasonable grounds to believe, and does believe, that there is concealed or kept as hereinafter described, the following property, to-wit: Cocaine and it's [sic] derivatives, which is a controlled substance, and possession of which is illegal per Nebraska State Statutes. All monies and records used to conduct an illegal narcotics operation. Venue identifying the occupants of 2622 Burdette Street, Omaha, Douglas County, Nebraska.

That said property is concealed or kept in, or about the following described place or person, to-wit: 2622 Burdette Street, Omaha, Douglas County, Nebraska, further described as the main level unit, in which access is made through the south and north main level doors, contained within a White and yellow, multi-family dwelling with a [sic] enclosed white porch with no numbers posted on the residence AND/OR the person of LAST NAME UNKNOWN, FIRST NAME "Pam", described as a Black female, approximately 5'2" tall, 140 pounds, with black hair with a red weave, 30 to 35 years of age.

That said property is under the control or custody of Suitco Sales 2030 North 104th Street.

. . . .

That the following are the grounds for issuance of a search warrant for said property and the reasons for the Affiants' belief, to-wit:

Within the past 48 hours of Wednesday 4 February 1998, Affiant Officers MARTINEZ . . . AND VENTE-ICHER . . . contacted a confidential and reliable informant, hereafter referred to as C/I, regarding narcotics dealing at 2622 Burdette Street, Omaha, Douglas County, Nebraska. The C/I advised that within past said 48 hours of Wednesday, 4 February 1998, he/she had occasion to be at the address of 2622 Burdette Street, Omaha, Douglas County, Nebraska. The C/I advised that he/she observed the resident, LAST NAME UNKNOWN, FIRST NAME "PAM" who he/she described as a black female, 5'2" tall, 140 pounds, with black hair with a red weave, 30 to 35 years of age, in possession of a white rock like substance which "PAM" indicated was crack cocaine. "PAM" [i]ndicated to the C/I that the crack cocaine was for sale, and that "PAM" would actively be selling the crack cocaine from 2622 Burdette Street, Omaha, Douglas County, Nebraska, during the evening hours of Wednesday, 4th February 1998.

Affiant Officer Martinez contacted the Omaha Public Power District and learned that the subscriber for services

at 2622 Burdette Street, Omaha, Douglas County, Nebraska, is Suitco Sales.

That a night-time search is requested because the C/I indicated would [sic] be selling crack cocaine from 2622 Burdette Street, Omaha, Douglas [County], Nebraska, during t[h]e night-time hour[s] of Wednesday, 4 February 1998.

. . . .

That a no-knock search warrant is requested because officers know from past experience that if they were to knock and announce their presence and purpose for being there, the crack cocaine being sought could be easily destroyed by flushing it down the toilet, sink, or by swallowing it.

Wherefore, the Affiant Officers pray that a search warrant may be issued according to law.

The judge issued a warrant based on the affidavit that same day. The warrant stated:

This matter came on for hearing on the 4th day of February 1998, upon the sworn application and affidavit for issuance of a search warrant of Omaha Nebraska Police Officer Stephen Venteicher . . . and Officer Jerry Martinez . . . and the Court, being fully advised in the premises finds as follows:

. . . .

That based upon the sworn affidavit and application for issuance of a search warrant of Omaha Police Officer Stephen Venteicher . . . and Officer Jerry Martinez . . . dated the 4th day of February 1998, that there is probable cause to believe that concealed on the premises located at 2622 Burdette Street, Omaha, Douglas County, Nebraska, further described as the main level unit, in which access is made through the south and north main level doors, contained within a white and yellow, multi-family dwelling with an enclosed white porch with no numbers posted on the residence, AND/OR the person of LAST NAME UNKNOWN, FIRST NAME "Pam" described as a black female, 30-35 years old, approximately 5'2" tall, 140

pounds with black hair with a red weave; the following described property, to-wit: cocaine, which is a controlled substance, and possession of which is illegal per Nebraska State Statutes. All monies and records used to conduct an illegal narcotics operation. Venue identifying the occupants of 2622 Burdette Street, Omaha, Douglas County, Nebraska.

. . . .

You ARE, THEREFORE, ORDERED, with the necessary and proper assistance, to search the afore described location and/or person for the purpose of seizing the afore described property, and if found, to seize and deal with the same as provided by law, and to make return of this warrant to me within 10 days after date hereof.

IT IS FURTHER ORDERED, that execution of the search warrant be forthwith during the night-time hours.

IT IS FURTHER ORDERED, that Omaha Nebraska Police Officer Stephen Venteicher . . . and Officer Jerry Martinez . . . make return of this search warrant to me within 10 days after the date hereof.

IT IS FURTHER AUTHORIZED, that a no-knock search is requested because officers know from past experiences that if they were to announce their presence and purpose for being there, the crack cocaine being sought could be easily destroyed by flushing it down the toilet, sink, or by swallowing it.

Although the no-knock warrant was to be executed at night, forthwith, it was not executed on February 4, 1998.

On February 7, 1998, before the warrant's execution, the police officers returned to the same judge with an addendum to the original affidavit and application, which the judge signed. The supplemental affidavit stated:

The C/I that provided this information has provided reliable information to Affiant Officers. The C/I has made controlled purchases of controlled substances under direct supervision of Affiant Officers. The C/I is on no terms of probation, parole, or work release through the State of Nebraska at this time.

However, no new search warrant was issued based upon the revised affidavit with the complete information, nor was the original warrant amended.

On February 7, 1998, the search warrant was executed. While executing the warrant, the police discovered that the address of the place to be searched was actually 2616 Burdette Street and that 2622 Burdette Street, the address specified in the February 4 affidavit and warrant, is a vacant lot. However, the residence that was actually searched matched the description in the search warrant in all respects save one—the residence was numbered, but the numbers were not visible from the street.

Various items of contraband were seized during the search. Edmonson was later convicted of possession with intent to deliver a controlled substance based on the evidence seized.

## II. ASSIGNMENTS OF ERROR

Edmonson asserts that the trial court erred in (1) denying her motion to suppress evidence seized under the search warrant issued on February 4, 1998; (2) failing to find insufficient probable cause for a search warrant to be issued on February 4, 1998, for Edmonson's residence; and (3) failing to suppress evidence seized under a search warrant executed on February 7, 1998, at an address different from the address on the warrant.

## III. SCOPE OF REVIEW

■ A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making the determination as to factual questions, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. However, to the extent questions of law are involved, an appellate court is obligated to reach conclusions independent of the decisions reached by the courts below. *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999).

## IV. ANALYSIS

### 1. PARTICULARITY OF WARRANT

Edmonson argues that the February 4, 1998, search warrant did not identify the place to be searched with sufficient particularity because it did not contain the correct street address. However, an error in the street address of the place to be searched is not per se fatal to the validity of the warrant. *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991).

The test to determine the sufficiency of a search warrant's description is whether the place to be searched is described with sufficient particularity so as to enable the executing officer to find and identify the location with reasonable effort and whether there is any reasonable possibility that another site might mistakenly be searched. *Id.* In making this determination, an appellate court considers whether (1) the address provided by the warrant, although incorrect, still describes the same piece of property; (2) the property intended to be searched is adjacent to that described in the search warrant and both are under the control of the defendant; (3) the incorrect address describes a place not in existence; (4) the other parts of the description which are correct limit the property to be searched to one place; and (5) the place which was intended to be searched had previously been under surveillance or was being surveilled while the warrant was obtained. *Id.*

In the instant case, the property intended to be searched, 2616 Burdette Street, was adjacent to the property described in the search warrant, 2622 Burdette Street. In addition, 2622 Burdette Street was a vacant lot, eliminating any possibility that 2622 Burdette Street might be mistakenly searched. The warrant described 2622 Burdette Street as a main-level unit, in which access is made through the south and north main-level doors, contained within a white and yellow multifamily dwelling with an enclosed white porch and no numbers posted on the residence. This is an accurate description of 2616 Burdette Street, except for the fact that 2616 Burdette Street was actually numbered. However, those numbers were not visible from the street, and thus, the officers did not see them until they executed the

warrant. More importantly, no other house on the block matched the description of the house in the warrant.

We conclude that Edmonson failed to prove that 2616 Burdette Street could have been confused with 2622 Burdette Street or any other house or lot in the area described by the warrant. This assignment of error is without merit.

## 2. PROBABLE CAUSE

■ Edmonson next argues that the trial court erred in overruling her motion to suppress the evidence seized under the search warrant because the search warrant, issued on February 4, 1998, was not supported by an affidavit establishing probable cause. To be valid, a search warrant must be supported by an affidavit establishing probable cause. *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999).

### (a) February 4 Affidavit

Edmonson argues that the affidavit offered in support of the warrant issued on February 4, 1998, failed to establish probable cause because it did not contain adequate evidence of the veracity of the confidential informant.

■ When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. See *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *disapproved in part on other grounds, State v. Johnson, supra.* Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Lytle, supra.* An affidavit in support of the issuance of a search

warrant must *affirmatively* set forth the circumstances from which the status of the informant can reasonably be inferred. *Id.*

Edmonson correctly notes that the only characterization of the confidential informant in the February 4, 1998, affidavit was that the informant was "reliable." There was no indication as to *why* the informant was considered reliable. Nothing in the February 4 affidavit indicates that the informant in the instant case had given reliable information in the past, that the statement was against his or her penal interest, that the police officers conducted an independent investigation establishing the informant's reliability, or that the informant was a citizen informant. See *id.* Yet, the February 4 affidavit relied entirely on the confidential informant's information to establish probable cause. If an affidavit does not establish that an informant is reliable, a search warrant issued solely upon the information supplied by the informant is invalid. See *id.*

Therefore, we conclude that the February 4, 1998, affidavit was insufficient to establish probable cause.

### (b) February 7 Affidavit

The State asserts that the affidavit issued on February 7, 1998, when considered with the February 4 affidavit, provided probable cause to issue the search warrant. The question is whether the February 7 affidavit may be considered in determining whether the search warrant was validly issued on February 4.

We begin our analysis with the words of the Fourth Amendment to the U.S. Constitution: "[N]o Warrants shall *issue*, but upon probable cause, supported by Oath or affirmation." (Emphasis supplied.) In unequivocal language, the Fourth Amendment requires a showing of probable cause when a warrant is *issued*, not when a warrant is *executed.* The distinction between issuance and execution " 'is no "technicality." ' " *State v. Novembrino*, 105 N.J. 95, 109, 519 A.2d 820, 828 (1987). The warrant requirement's "protection consists in requiring that those inferences [establishing probable cause] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct.

367, 92 L. Ed. 436 (1948). The function of the magistrate or judge as a neutral and detached arbiter is usurped if the police are allowed to supplement the evidence offered in support of a search warrant after the warrant is issued, i.e., after the magistrate or judge has already made his or her findings concerning probable cause. This practice, if approved, would encourage the police to apply for warrants even when probable cause is lacking, since presumably, they could always supplement the original affidavit once additional evidence was obtained. Such a practice would erode the ability of the magistrate or judge to deliberate effectively when evaluating whether probable cause had been established.

Therefore, we conclude that the affidavit establishing probable cause for the issuance of a search warrant cannot be supplemented after the warrant has been issued.

Accordingly, this court cannot consider the February 7, 1998, affidavit in evaluating whether sufficient probable cause was established for the issuance of the search warrant on February 4. The judge, when presented with additional information establishing probable cause, should have rescinded the warrant issued on February 4 and issued a new warrant on February 7, or amended the February 4 warrant by interlineation to indicate that the February 7 affidavit was considered and findings were made thereon. See *State v. Lee*, 247 La. 553, 172 So. 2d 678 (1965).

### (c) Good Faith

■ The State also argues that even if the warrant was not supported by probable cause, the police acted in good faith in reliance upon the warrant, citing *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In *Leon*, the Supreme Court held that the exclusionary rule is inapplicable to evidence obtained pursuant to an invalid warrant upon which police officers acted in objectively reasonable good faith reliance. See *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999), citing *United States v. Leon, supra*.

The Court's holding was based on the rationale behind the exclusionary rule:

First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.

Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

*United States v. Leon*, 468 U.S. at 916.

The Court stated that suppression of evidence should be ordered only in those cases in which exclusion will further the purposes of the exclusionary rule. *Id.* Suppression therefore remains an appropriate remedy if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his or her judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient—such as in failing to particularize the place to be searched or the things to be seized— that the executing officer cannot reasonably presume it to be valid. *United States v. Leon, supra.* If none of the aforementioned circumstances exist, then the evidence should not be suppressed. *Id.*

This court first discussed the application of the *"Leon* good faith exception" in *State v. Pecha*, 225 Neb. 673, 676, 407 N.W.2d 760, 763 (1987), wherein we held that the application of the exclusionary rule was appropriate when the warrant, which contained a catchall " 'John and/or Jane DOE' " phrase, was so facially deficient that the executing officers could not reasonably presume it to be valid. Because the dispositive issue in *Pecha* was the facial deficiency of the warrant, this court had no reason to address what evidence may be considered in making a *Leon* good faith analysis. Likewise, we did not address the stan-

dard by which the objective reasonableness of the police would be judged.

However, in *State v. Parmar*, 231 Neb. 687, 437 N.W.2d 503 (1989), wherein we again addressed the *Leon* good faith exception, the question was whether the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Relying on *U.S. v. Hove*, 848 F.2d 137 (9th Cir. 1988), we held that in answering this question, this court could consider only the facts presented to the magistrate in the affidavit underlying the search warrant, i.e., an appellate court is limited to the four corners of the affidavit. *State v. Parmar, supra.* We also relied on *Hove*, which in turn relied on *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), in adopting a standard by which the good faith of the police would be judged, stating that the test for objectively reasonable reliance is whether the affidavit was sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. *State v. Parmar, supra.*

An application of this court's holdings in *Parmar* to this case demonstrates certain inconsistencies between *Parmar*'s analysis and the analysis in *Leon*.

### *(i) Four Corners Doctrine and Leon Good Faith Exception*

First, if we are limited to considering the four corners of the affidavit supporting the issuance of the February 4, 1998, search warrant, our analysis would be limited to the February 4 affidavit. As we have already determined, the February 4 affidavit did not contain any information concerning the reliability of the informant. We have previously held that a search warrant issued on the basis of an affidavit which lacks any evidence as to the reliability of the informant upon whose information it relies is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *State v. Reeder*, 249 Neb. 207, 543 N.W.2d 429 (1996), citing with approval *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). See, also, *U.S. v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996). Therefore, if we are to adhere to *Parmar*, we would be forced to conclude that the police did not act with good faith in this case.

Such a conclusion would not, however, be consistent with the rationale in *Leon*. A review of the totality of the circumstances surrounding the issuance and eventual execution of the warrant indicates that the Fourth Amendment violation in this case was the result of judicial error, not police error. Had the judge issued a new warrant on February 7, 1998, when presented with additional information by the police (assuming that the informant's tip was not stale by that time, an issue that was not raised and that we do not address), no Fourth Amendment violation would have occurred. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *United States v. Leon*, 468 U.S. at 921. Thus, courts have held that when assessing the objective reasonableness of officers' executing a warrant, an appellate court must look to the totality of the circumstances, including information that was not presented to the issuing judge. *U.S. v. Johnson*, 78 F.3d 1258 (8th Cir. 1996). See, also, *U.S. v. Taxacher*, 902 F.2d 867 (11th Cir. 1990), *cert. denied* 499 U.S. 919, 111 S. Ct. 1307, 113 L. Ed. 2d 242 (1991); *U.S. v. Martin*, 833 F.2d 752 (8th Cir. 1987).

Evaluation of the totality of the circumstances when conducting a *Leon* good faith analysis is consistent with the purposes underlying the exclusionary rule and the good faith exception. *U.S. v. Taxacher, supra*. The purpose of the *Leon* good faith exception is to limit the application of the exclusionary rule to those instances when it will most effectively serve to deter police misconduct. Because this purpose is best served by viewing all of the circumstances surrounding the issuance and execution of the warrant, we conclude that in assessing the good faith of an officer's conducting a search pursuant to a warrant, an appellate court must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit.

We emphasize that this conclusion in no way conflicts with the limitations placed upon an appellate court's evaluation of *probable cause*. Whether the police acted in objectively reasonable good faith is " 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' " *United States v. Leon*,

468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), quoting *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Thus, when evaluating probable cause, we continue to adhere to the rule restricting appellate courts to the consideration of the information and circumstances contained within the four corners of the affidavit. *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999).

### (ii) Standard of Objective Reasonableness

The second inconsistency between *Leon* and *State v. Parmar*, 231 Neb. 687, 437 N.W.2d 503 (1989), involves the standard by which the good faith of the police should be judged when evaluating whether the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The present standard in *Parmar* is whether the affidavit was sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Applying that standard to this case, it is clear that, standing alone, the February 4 affidavit would not create disagreement among thoughtful and competent judges as to the existence of probable cause. See *State v. Reeder*, 249 Neb. 207, 543 N.W.2d 429 (1996). Thoughtful and competent judges would know that an affidavit lacking any information concerning the credibility of a confidential informant is insufficient. Such judges would likewise know that the February 7 affidavit, although enough to establish probable cause when considered collectively with the February 4 affidavit, cannot relate back to the February 4 warrant.

This analysis is, however, merely academic. *Leon*'s analysis clearly indicates that the question is not what thoughtful and competent *judges* would know about the warrant, but, rather, what an objectively reasonable *police officer* would know.

In *U.S. v. Taxacher*, 902 F.2d 867 (11th Cir. 1990), *cert. denied* 499 U.S. 919, 111 S. Ct. 1307, 113 L. Ed. 2d 242 (1991), the 11th Circuit rejected the standard applied in *U.S. v. Hove*, 848 F.2d 137 (9th Cir. 1998), and adopted by this court in *Parmar*. The court in *Taxacher* noted that under *Leon*, the focus is on the officer, not the judge or magistrate. "The 'good-faith inquiry is confined to the objectively ascertainable question

whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.' " *U.S. v. Taxacher*, 902 F.2d at 871, quoting *United States v. Leon, supra.* The *Taxacher* court recognized that the Court in *Leon* had opined that reasonable jurists had disagreed about whether there was probable cause on the facts in *Leon.* However, the court explained that the "reasonable jurist" language used in *Leon*

> was merely intended to bolster the Court's holding that the officer had acted reasonably under the circumstances; *Leon* did not establish a "reasonable jurist" test as the threshold. If a reasonable jurist could believe in objective good faith that there was probable cause, obviously a reasonably well-trained officer could believe likewise. However, because a reasonable jurist has more legal training than a reasonably well-trained officer, what would be reasonable for a well-trained officer is not necessarily the same as what would be reasonable for a jurist.

*U.S. v. Taxacher*, 902 F.2d at 872.

In other words, the fact that thoughtful and competent judges would agree that there was no probable cause to support a warrant does not necessarily mean that an objectively reasonable police officer could not execute the warrant in good faith. Likewise, it is of no great import that the judge or magistrate issued a warrant and an appellate court subsequently concludes that the warrant was not supported by probable cause. In every case in which a warrant is issued and later invalidated, there is disagreement between judicial officers. If the fact that an appellate court came to a different conclusion than the issuing judge or magistrate was dispositive of good faith, the exclusionary rule would have no force.

We conclude that when evaluating whether the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, an appellate court should address whether the officer, considered as a police officer with a reasonable knowledge of what the law prohibits, acted in objectively reasonable good faith in relying on the warrant.

### (iii) Application of Law to Facts

Having set forth the appropriate *Leon* good faith analysis, we must determine whether the evidence in this case should be suppressed. In this case, there is no evidence that the judge was misled or wholly abandoned her judicial role, or that the warrant was so facially deficient that the officers could not reasonably presume it to be valid. See *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) (setting forth four circumstances when evidence should nonetheless be excluded). Thus, the only question is whether the warrant was based on information so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

In answering this question, we look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit, to determine whether the officer, considered as a police officer with a reasonable knowledge of what the law prohibits, acted in objectively reasonable good faith in relying on the warrant.

Clearly, an officer with a reasonable knowledge of what the law prohibits would realize that the February 4, 1998, affidavit did not establish probable cause. However, prior to executing the February 4 warrant, the officers in this case correctly realized as much and submitted the February 7 affidavit. Assuming that the information was not stale, the February 4 and 7 affidavits, considered collectively, established probable cause.

The Fourth Amendment violation in the instant case stems not from the lack of information concerning probable cause, per se, but from the issuing judge's failure to make a new probable cause finding when the information in the February 7 affidavit was presented.

Edmonson argues that the police should have requested that the judge issue a new warrant. However, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's . . . judgment that the form of the warrant is technically sufficient." *United States v. Leon*, 468 U.S. at 921. Here, a sufficiently particular warrant already existed at the time the police officers presented the judge with the supplemental affidavit. All that the judge needed to do was to make a new finding of probable cause

and to either issue a new, identical warrant or amend the warrant as already issued to reflect the new finding. In the absence of direct legal precedent as to the appropriate action, and our research reveals none, a reasonable police officer could not be expected to know that the February 7 affidavit, in and of itself, could not cure the defect in the February 4 warrant.

We conclude that the police acted in objectively reasonable good faith reliance on the February 4, 1998, warrant and, therefore, that the evidence obtained pursuant thereto need not be suppressed. It may be that, having set forth the law in this opinion, a police officer with reasonable knowledge of what the law prohibits would in the future be required to ask the magistrate or judge for a new warrant. Nonetheless, there was no clear precedent to guide the police in this case, and thus, there was no bad faith. The deterrent purpose of the exclusionary rule would not be served by suppressing evidence seized pursuant to a warrant supported by probable cause that actually existed and was known by the issuing judge merely because the judge failed to make the appropriate findings. See *State v. Barrilleaux*, 620 So. 2d 1317 (La. 1993).

## V. CONCLUSION

We conclude that the place to be searched was described with sufficient particularity so as to enable the executing officer to find and identify the location with reasonable effort and that there was no reasonable possibility that another site might be mistakenly searched.

However, we also conclude that the judge committed a constitutional error by failing to issue a new search warrant based on the February 7, 1998, affidavit, or, in the alternative, amend the February 4 search warrant. Nonetheless, pursuant to *Leon*, evidence obtained pursuant to an invalid search warrant should be suppressed only if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his or her judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); (3) the warrant is based on

an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient—such as in failing to particularize the place to be searched or the things to be seized—that the executing officer cannot reasonably presume it to be valid. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In determining whether a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, an appellate court looks to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit, to determine whether the officer, considered as a police officer with a reasonable knowledge of what the law prohibits, acted in objectively reasonable good faith in relying on the warrant. To the extent that *State v. Parmar*, 231 Neb. 687, 437 N.W.2d 503 (1989), and its progeny are inconsistent with this test, those cases are hereby overruled.

Having applied the above test to the facts in this case, we conclude that, despite the constitutional violation, the officers acted in good faith when executing the February 4, 1998, warrant. Therefore, the evidence seized from Edmonson's residence need not be suppressed.

AFFIRMED.