STATE OF NEBRASKA, APPELLEE, V.
DARREN L. BOSSOW, APPELLANT.
744 N.W.2d 43

Filed January 18, 2008.   No. S-07-099.

Kate M. Jorgensen and, on brief, Andrew D. Weeks, of Stratton & Kube, P.C., for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

Gerrard, J.

Darren L. Bossow was convicted in a jury trial of possession of a controlled substance with intent to manufacture.[1] Bossow appeals, primarily arguing that the district court failed to properly instruct the jury with regard to the "personal use exception" in Neb. Rev. Stat. § 28-401(14) (Cum. Supp. 2004). Bossow also asserts that the court erred in denying his motion to suppress evidence obtained from a search of his residence and statements he made to law enforcement officials, and for overruling his motion to reopen his case. For the reasons that follow, we affirm the judgment of the district court.

## STATEMENT OF FACTS

### ACQUIRING SEARCH WARRANT

On April 20, 2006, Sandra Tighe, an investigator with the Nebraska State Patrol, prepared an affidavit for the purpose of securing a search warrant to search "the person of Darren L. Bossow," his two vehicles, and his residence. The first section in Tighe's affidavit contained background information describing her training and experience with the Nebraska State Patrol. This section also included general information relating to marijuana plants—specifically, that marijuana plants "can take up to 22 weeks to mature," "can grow in excess of eight (8) feet tall[,] and can produce up to one (1) pound of illegal usable plant material at the time of harvest." Tighe's affidavit further explained that based on her "training and experience," she knew that "individuals involved in the manufacture or growing of marijuana" may have in their possession, among other things, "firearms and ammunition"; "large amounts of cash . . . from the sales of the marijuana"; and "marijuana, packaging materials, processing articles, [or] articles of horticulture . . . on their person(s)."

In the second section of Tighe's affidavit, she explained that she had received a written report from another police officer, who had interviewed Ryan Lindstrom and B.J. Richtig. Lindstrom had informed the officer that on March 18, 2006, he and Richtig had been in Bossow's residence and had seen

---

[1] Neb. Rev. Stat. § 28-416(2)(b) (Cum. Supp. 2006).

"a four foot tall marijuana plant and approximately five smaller three inch marijuana plants under a heat lamp in the living room area by the entertainment center." Lindstrom had stated that "all of the plants were potted and well taken care of" and that the larger marijuana plant was in the "'skunk'" stage of the growing process.

Tighe's affidavit stated that on April 3, 2006, Lindstrom, Richtig, and a third person had gone to Bossow's residence, but that Bossow had not been present. Lindstrom had, however, spoken to Bossow's son, who had told Lindstrom that the marijuana plants had been moved to Bossow's bedroom closet. Lindstrom had not seen the marijuana plants on April 3, but the house had a "strong nasty odor of marijuana on the inside while he was present."

Tighe also averred that on April 3, 2006, the police officer had interviewed Richtig and Colin Zuhlke. Richtig confirmed to the officer that he had gone with Lindstrom to Bossow's residence on March 18 and had seen the marijuana plants under a heat lamp in the living room. Richtig had described one of the plants as being 4 feet tall. Zuhlke had told the officer that he had been in Bossow's residence on March 19 and seen "four or five large marijuana plants in the living room between the entertainment center and the wall." Zuhlke had said that the plants were approximately 4 feet tall, potted like houseplants, and under lights. Tighe's affidavit also noted that she had interviewed Zuhlke on April 20, and he had confirmed seeing the marijuana plants in Bossow's residence on March 19.

Tighe's affidavit further stated that Bossow had previously been arrested and that on April 20, 2006, she had reviewed Bossow's Pierce County sheriff's office medical screening form, which had been filled out on April 2. In this form, Bossow had volunteered information that he used marijuana "occasionally and last used marijuana the previous day, April 1, 2006." The remaining sections of Tighe's affidavit provided, among other things, a description of Bossow's physical characteristics, the location of his residence, and a description of Bossow's vehicles.

Based on Tighe's affidavit, the district court issued a warrant to search "[t]he person of Darren Lee Bossow," his vehicles, and his residence.

### Detaining and Questioning Bossow

On April 21, 2006, in anticipation of executing the search warrant on Bossow's residence, the police officers who were to be involved in the search held a briefing. While the officers were conducting the briefing, an investigator, who was doing surveillance on Bossow's residence, called an officer at the briefing and said that Bossow was leaving his residence. As a result, Trooper Jason Sears was instructed to leave the briefing and detain Bossow until the search warrant had been executed.

Sears saw Bossow's car pull into the parking lot of a gas station and watched Bossow leave his car and enter the gas station. Sears testified that before following Bossow into the building, he noticed that Bossow's car had a cover around the outside of the license plate, such that Sears could not determine whether the car was currently registered. Sears entered the building and informed Bossow that he wanted to talk to Bossow outside, about his license plate. Once outside the building, Bossow identified himself to Sears as "Darren Bossow." But, when Sears asked for a driver's license or other proof of identity, Bossow was unable to produce any. It was later determined that Bossow's driver's license had been suspended.

Sears informed Bossow that he was going to take Bossow to the sheriff's office to "clear up the registration and his identity" and because there was an investigator at the sheriff's office who wanted to speak to Bossow. On cross-examination, Sears testified that the purposes for "[d]etaining" Bossow were first, to detain him "for the search warrant" and, second, because Bossow "didn't have identification and [Sears] wanted to be sure that was him for sure."

Sears handcuffed Bossow, placed Bossow in his police car, and began driving to the sheriff's office. While driving from the gas station to the sheriff's office, Sears advised Bossow of his *Miranda* rights.[2] When they arrived at the sheriff's office, Tighe approached Sears' police car and, while Bossow was still seated in the back of the car, gave Bossow a copy of the search

---

[2] See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

warrant. Tighe testified that after Bossow read the search warrant, Bossow admitted there was a marijuana plant in his house in an upstairs bedroom closet.

Sears took Bossow into the sheriff's office while Tighe and another officer remained outside and searched Bossow's car, which had been brought to the sheriff's office. The officers did not find any drugs or drug paraphernalia in Bossow's car. Following the search of Bossow's car, Tighe returned to the sheriff's office and again advised Bossow of his *Miranda* rights, after which Bossow signed a waiver of rights form.

Tighe testified that after reading Bossow his *Miranda* rights, she questioned him about the marijuana plants in his house. Tighe testified that Bossow told her that he had taken approximately eight marijuana seeds from marijuana that he had purchased and had planted those seeds in a ceramic pot. Bossow further explained that he watered the plants and placed them under a heat lamp to help them grow. On cross-examination, Tighe stated that Bossow told her that he "occasionally" used marijuana and that the marijuana plant was "an experiment" and was for his personal use.

### EXECUTION OF SEARCH WARRANT

On April 21, 2006, shortly after Bossow left his residence, police officers executed the search warrant at Bossow's residence. In Bossow's upstairs bedroom closet, police found a ceramic pot containing four marijuana plants, a heat lamp, and a water spray bottle. The marijuana plants had grown to be 3 to 4 feet in height. In other areas of the house, police also found two triple-beam scales and a marijuana pipe.

A police officer who assisted in the search testified that the marijuana plants had a "viable root system" and would "develop and if nurtured or cultivated [would] produce a product." The officer further testified that these plants were not "mature plants," nor were they "robust for this stage" of development. The officer stated that the plants were "about average" and that he had seen worse.

### MOTION TO SUPPRESS

The State filed an information charging Bossow with possession of a controlled substance with intent to manufacture,

pursuant to § 28-416(2)(b). Bossow subsequently filed a motion to suppress all of the evidence seized as a result of the search, and all statements made to law enforcement on April 21, 2006. In support of his motion to suppress, Bossow argued that the search warrant was issued on the basis of an affidavit that failed to establish probable cause because the affidavit contained stale evidence. Bossow also argued that Sears did not have probable cause to detain him on April 21 and that as a result, the incriminating statements he made to law enforcement were not admissible.

Following a hearing, the district court overruled Bossow's motion to suppress. As to the incriminating statements, the court determined that "[i]t does not matter what the officer thought at the time he detained [Bossow]. The fact is that at that time the officer clearly had probable cause to arrest [Bossow] for operating a motor vehicle while his license was suspended." The court determined that Bossow's statements were admissible, based on this probable cause and the facts that Bossow was given his *Miranda* rights while being taken to the sheriff's office and again after arriving at the sheriff's office. The court further determined that the evidence presented in the affidavit was not stale and that as a result, there was probable cause supporting the magistrate's decision to issue the search warrant.

## JURY INSTRUCTION

A jury trial was conducted, and during trial, Bossow preserved the issues raised in his motion to suppress by making timely objections to the offered evidence. After the State had rested its case, Bossow moved for a directed verdict, citing *State v. Wyatt*[3] and the statutory exception in § 28-401(14) providing that "manufactur[ing] shall not include the preparation or compounding of a controlled substance . . . for [one's] own use." Bossow argued that the evidence at trial established that he qualified for the "personal use exception" in § 28-401(14). Specifically, Bossow pointed to Tighe's testimony on cross-examination that Bossow told her the marijuana plants were for

---

[3] *State v. Wyatt*, 6 Neb. App. 586, 575 N.W.2d 411 (1998), *overruled on other grounds, State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000).

his own personal use. The court overruled Bossow's motion for a directed verdict, finding that the State had produced sufficient evidence for the jury to deliberate on the charge of possession of a controlled substance with the intent to manufacture. Bossow rested his case.

The court then conducted a jury instruction conference. During the conference, Bossow moved to reopen his case in order to introduce a "lab report [that] has the weight of the marijuana" and "to allow [Bossow] . . . to testify in lieu of the court's interpretation of State v. Wyatt, about what is required as far as [Bossow's] burden or proof" relating to the "personal use exception." The State responded that it had anticipated that Bossow would testify, but when the defense rested, the State released its rebuttal witnesses. The court denied Bossow's motion to reopen his case.

Bossow also objected to jury instruction No. 6, which set forth the definitions of "manufacture" and "production" as defined in § 28-401(14) and (21). Jury instruction No. 6 stated, in relevant part:

> "Manufacture" shall mean the production, preparation, propagation, compounding, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and shall include any packaging . . . of the substance or labeling or relabeling of its container, except that manufacture shall not include the preparation or compounding of a controlled substance by an individual for his or her own use.

> "Production" shall include the manufacture, planting, cultivation, or harvesting of a controlled substance.

In addition to jury instruction No. 6, Bossow requested that the jury be given an instruction stating that "[if] you find by the greater weight of the evidence that the defendant prepared of [sic] compounded marijuana for his own use, you must find the defendant not guilty of possession of marijuana with intent to manufacture." The court overruled Bossow's objection and denied his requested instruction.

The jury found Bossow guilty of possession of a controlled substance with intent to manufacture, and the court convicted Bossow pursuant to that verdict. Bossow appeals.

## ASSIGNMENT OF ERROR

Bossow assigns that the district court erred in (1) refusing to instruct the jury on his burden of proof for the statutory "personal use exception," (2) overruling his motion for a directed verdict, (3) overruling his motion to suppress the evidence seized as a result of the search warrant, (4) overruling his motion to suppress the statements he made to law enforcement, and (5) overruling his motion to reopen his case.

## STANDARD OF REVIEW

■ Statutory interpretation presents a question of law, and an appellate court resolves such issues independently of the lower court's conclusions.[4]

■ A trial court's ruling on a motion to suppress, based on a claim of insufficiency of the affidavit supporting issuance of a search warrant, will be upheld unless its findings are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and considers it observed the witnesses.[5]

■ In criminal prosecutions, the withdrawal of a rest in a trial on the merits is within the discretion of the trial court.[6]

## ANALYSIS

"PERSONAL USE EXCEPTION" IN § 28-401(14) DOES NOT
APPLY TO "PRODUCTION" OF CONTROLLED SUBSTANCE

Bossow was convicted of possession of a controlled substance with the intent to manufacture—specifically, production of marijuana. Section 28-401(14) defines "manufacture," in relevant part, as follows:

---

[4] *State v. McKinney*, 273 Neb. 346, 730 N.W.2d 74 (2007).

[5] *State v. Ball*, 271 Neb. 140, 710 N.W.2d 592 (2006).

[6] *State v. Thomas*, 236 Neb. 84, 459 N.W.2d 204 (1990), *disapproved on other grounds, State v. Boslau*, 258 Neb. 39, 601 N.W.2d 769 (1999).

Manufacture shall mean the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly, by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis . . . . *Manufacture shall not include the preparation or compounding of a controlled substance by an individual for his or her own use* . . . . [(Emphasis supplied.)]

"Production" is defined in § 28-401(21) as including "the manufacture, planting, cultivation, or harvesting of a controlled substance."

Bossow argues that the district court erred in not instructing the jury on the burden of proof Bossow was required to meet in order for the statutory "personal use exception" to apply. The State contends, and we agree, that the "personal use exception" is not available to Bossow because Bossow was charged with the "production" of marijuana, and pursuant to the plain language of § 28-401(14), the "production" of marijuana is not included within the "personal use exception." Our analysis in this regard is guided by well-established principles of statutory interpretation.

Although penal statutes are strictly construed, they are given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[7] A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[8] If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.[9]

In defining the term "manufacture," § 28-401(14) uses six specific terms to describe what types of activity are proscribed. But of those six terms, only two are excluded from the definition

[7] *State v. Aguilar*, 268 Neb. 411, 683 N.W.2d 349 (2004).

[8] *State v. Wester*, 269 Neb. 295, 691 N.W.2d 536 (2005).

[9] *State v. Warriner*, 267 Neb. 424, 675 N.W.2d 112 (2004).

of "manufacture" through application of the "personal use exception"—specifically, "preparation" and "compounding" of a controlled substance. We find it significant that the Legislature expressly limited the "personal use exception" to only two of the specified types of "manufacture" and did not include "production," which is the only accurate description of the conduct in which Bossow was alleged to have engaged.

The suggestion that growing marijuana is encompassed within the terms "preparation" or "compounding" of a controlled substance, as urged by Bossow, fails to recognize that "planting, cultivat[ing], or harvesting" a controlled substance is already clearly included within the definition of "production," as opposed to "preparation" or "compounding." In short, the production of marijuana is plainly prohibited. Had the Legislature intended to include within the "personal use exception" all of the activities included within the definition of "manufacture," it could have easily done so. The plain meaning of the "personal use exception" is to avoid finding an individual liable for the felony of manufacturing a controlled substance when that individual is already in possession of the controlled substance and is simply making it ready for use, such as rolling marijuana into cigarettes for smoking or combining it with other ingredients for use.[10] Given the plain language of the statute, it is evident that the Legislature intended to limit the application of the exception to only the "preparation" or "compounding" of a controlled substance.

Bossow contends that the "personal use exception" is applicable to this case, citing *Wyatt*,[11] a decision of the Nebraska Court of Appeals. In *Wyatt*, police officers, pursuant to a search warrant, searched David Wyatt's residence and found, among other things, a healthy marijuana plant growing in a bucket, marijuana seeds, and paraphernalia. Wyatt was charged with manufacturing a controlled substance, to wit, marijuana.

---

[10] *State v. Childers*, 41 N.C. App. 729, 255 S.E.2d 654 (1979). See, also, *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002); *State v. Underwood*, 168 W. Va. 52, 281 S.E.2d 491 (1981); *People v Pearson*, 157 Mich. App. 68, 403 N.W.2d 498 (1987); *State v. Netzer*, 579 S.W.2d 170 (Mo. App. 1979).

[11] *State v. Wyatt, supra* note 3.

At trial, Wyatt argued that his conduct fell within the statutorily mandated "personal use exception" in § 28-401(14). Wyatt claimed that the State did not prove beyond a reasonable doubt that he violated the manufacture element of the statute because there was no evidence that the marijuana found in his residence was used for anything other than his own personal use. The Court of Appeals concluded that the burden was on Wyatt to prove that he fell within the "personal use exception,"[12] but he had failed to "offer any evidence to show that he was preparing or compounding the marijuana for his own personal use."[13] Accordingly, Wyatt's conviction for manufacturing marijuana was affirmed.

But contrary to Bossow's argument, the issue in *Wyatt* was simply whether the defendant was required to prove that the marijuana was intended for his own "personal use." Whether the marijuana was being "produced," as opposed to "prepared" or "compounded," was not at issue. In short, *Wyatt* does not support Bossow's argument, which is without merit. We hold that the "personal use exception" in § 28-401(14) only applies to "preparation" and "compounding," but does not apply to the "production" of a controlled substance, even if that production is for personal use. Accordingly, because the "personal use exception" was not available to Bossow, the district court did not err in refusing to instruct the jury as Bossow had requested.

Bossow's second assignment of error is that the district court erred in overruling his request for a directed verdict based on his claim that he met the "personal use exception" to manufacturing. For the reasons stated, this assignment of error is also without merit.

INFORMATION IN AFFIDAVIT WAS SUFFICIENTLY RELATED IN TIME TO ISSUANCE OF WARRANT TO JUSTIFY FINDING OF PROBABLE CAUSE

Next, Bossow argues that the district court erred in overruling his motion to suppress because the affidavit supporting the search warrant contained stale evidence and therefore did not establish probable cause. A search warrant, to be valid,

---

[12] See *State v. Taylor*, 221 Neb. 114, 375 N.W.2d 610 (1985).

[13] *State v. Wyatt, supra* note 3, 6 Neb. App. at 597, 575 N.W.2d at 419.

must be supported by an affidavit which establishes probable cause. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. Proof of probable cause justifying the issuance of a search warrant generally must consist of facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at that time.[14] In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause.[15]

In arguing that the information in the affidavit was stale, Bossow points to the fact that pursuant to the affidavit, the last time the marijuana plants in Bossow's residence had actually been seen was March 19, 2006, but the search warrant was not issued until April 20, approximately 1 month later. We explained in *State v. Faber*[16] that

> " '[t]here is no bright-line test for determining when information is stale. Whether the averments in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case, and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. Time factors must be examined in the context of a specific case and the nature of the crime under investigation.' . . ."

We further stated that, where the affidavit recites a mere isolated violation, it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating

---

[14] *State v. Ildefonso*, 262 Neb. 672, 634 N.W.2d 252 (2001).

[15] *State v. Lammers*, 267 Neb. 679, 676 N.W.2d 716 (2004).

[16] *State v. Faber*, 264 Neb. 198, 213-14, 647 N.W.2d 67, 82 (2002).

activity of a protracted and continuous nature—a course of conduct—the passage of time becomes less significant.[17]

In the present case, notwithstanding the passage of time between the information in the affidavit and the issuance of the warrant, we find that the information in the affidavit was not too stale to establish probable cause. The information in the affidavit establishes that three separate individuals saw marijuana plants growing under a heat lamp in Bossow's residence approximately 1 month before the issuance of the search warrant.

The delay between the evidence collected in the affidavit and the issuance of the warrant is not significant when considered in light of the nature of the crime with which Bossow was charged. Growing marijuana is not an isolated activity where the evidence supporting probable cause tends to disappear quickly. Rather, growing marijuana is a protracted process, for which there is a much greater probability that the evidence related to the crime would remain on the premises for some time. As indicated in Tighe's affidavit, marijuana plants can take up to 22 weeks to mature and can grow in excess of 8 feet tall.

But here, the largest marijuana plant described in the affidavit was approximately 4 feet tall, and the other marijuana plants in Bossow's residence were much smaller than that. This information indicates that the plants were, at that time, in the early stages of development and unlikely to be harvested in the near future or removed from Bossow's residence. Given the particular circumstances of this case, we conclude that the passage of time was not fatal to the court's finding of probable cause.

A magistrate's determination of probable cause to issue a search warrant should be paid great deference by reviewing courts.[18] After-the-fact scrutiny by courts of the sufficiency of an affidavit used to obtain a search warrant should not take the form of a de novo review.[19] In this case, the facts justifying the issuance of the warrant were sufficiently related

---

[17] *Id.*

[18] *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996).

[19] *Id.*

to the time of the issuance of the warrant to justify the district court's finding of probable cause.

### Bossow's Detention Was Not Unreasonable
### Seizure and Statements He Made to
### Law Enforcement Are Admissible

In a related argument, Bossow claims that the information provided in the affidavit did not establish probable cause to search his person and that therefore, his detention was an unreasonable seizure, and the incriminating statements he made to law enforcement after he was detained should be suppressed. We disagree. When the evidence in the affidavit and the circumstances surrounding Bossow's detention are considered collectively, we find that Bossow's detention was not an unreasonable seizure.

As discussed above, the information in the affidavit was sufficient to establish probable cause to believe that Bossow was engaged in criminal activity—specifically, the manufacture of marijuana. And in particular, Tighe averred that individuals involved in the manufacture of marijuana may have evidence on their person, such as marijuana itself; large amounts of cash; weapons; or materials used for the production, processing, or packaging. Contrary to Bossow's argument, the affidavit established probable cause for the search of Bossow's residence and his person.

Nor did police act unreasonably in taking Bossow into custody and transporting him to the police station. A valid warrant to search Bossow had already issued. When contacted by police, Bossow was unable to produce identification and had been seen by police unlawfully operating a vehicle without a driver's license.[20] When considered collectively, the search warrant, the need to positively identify Bossow in connection with the search, and Bossow's unlawful behavior are sufficient to establish that seizing Bossow was reasonable.

---

[20] See Neb. Rev. Stat. §§ 60-489 (Cum. Supp. 2006) and 60-4,111 (Reissue 1995).

### DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
### OVERRULING BOSSOW'S REQUEST TO REOPEN HIS CASE

Finally, Bossow claims that the district court erred in overruling his motion to reopen his case and allow him to testify regarding the burden of proof for the "personal use exception." The withdrawal of a rest in a trial on the merits is within the discretion of the trial court.[21] As already discussed, the "personal use exception" was not available to Bossow. Nor did Bossow, in support of his motion, claim that he intended to proffer evidence that would change that conclusion. Instead, Bossow's motion was premised on his intent to proffer evidence relevant only to the misunderstanding of the "personal use exception" that the district court had correctly rejected. Thus, the district court did not abuse its discretion in refusing Bossow's request to reopen his case to present evidence relating to this exception. Bossow's final assignment of error is without merit.

### CONCLUSION

For the foregoing reasons, we find no merit to Bossow's assignments of error and affirm the judgment of the district court.

AFFIRMED.

---

[21] *State v. Thomas, supra* note 6.