IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. MCKNIGHT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLANT,

V.

DELONTA A. MCKNIGHT, APPELLEE.

Filed August 25, 2015.    No. A-15-301.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Donald W. Kleine, Douglas County Attorney, Michael W. Jensen, and Sean P. Lynch for appellant.

Thomas C. Riley, Douglas County Public Defender, and Cindy A. Tate for appellee.

BISHOP, Judge.

The State of Nebraska brings this appeal to one judge of this court, pursuant to Neb. Rev. Stat. § 29-824 (Reissue 2008), alleging that the trial court erred in granting Delonta A. McKnight's motion to suppress all evidence obtained as a result of the execution of a search warrant of his residence. I affirm.

BACKGROUND

On November 20, 2014, an officer with the Omaha Police Department presented a judge of the county court for Douglas County with an "Affidavit and Application for Issuance of a Search Warrant" for a residence located at an address on North 38th Street, Omaha, Douglas County, Nebraska ("subject address").

In his affidavit and application for a search warrant, the affiant officer set forth the grounds for issuance of the warrant. The affiant officer stated that he received an anonymous narcotics

complaint concerning the subject address. He stated that "[t]he complaint advised there was constant short term foot and vehicle traffic, indicative of narcotics sales, occurring at [that address]." The affiant officer further indicated that on November 19, 2014, he and two other officers proceeded to the above address shortly before 8 a.m. (which the affiant officer noted was the regular day for trash pickup in that particular neighborhood). When the officers arrived at the above address, they observed several bags of trash adjacent to the curbside in front of the address, in the grass area between the street and sidewalk. The officers retrieved three bags of trash, took them to a secured location, and searched them.

The affiant officer further stated that during the search of the trash bags, the officers found: (1) a .1 g marijuana roach; (2) a venue item addressed to Fred J. Pecha at the subject address; and (3) a venue item address to the "Resident" of the subject address. The affiant officer also consulted with representatives of the Metropolitan Utilities District and the Omaha Public Power District, both of whom stated that McKnight was the current subscriber for services at the subject address on November 19. The affiant officer stated in his affidavit that McKnight had a history of weapons charges and was currently bound over on a gun charge.

According to the affidavit, officers submitted the marijuana roach to the Eastern Nebraska Forensic Lab for testing. The affiant officer received a report that the marijuana roach tested positive for marijuana.

The affiant officer stated that he had reason to believe, and did believe, that if the court authorized a search warrant for the subject address, that officers would "obtain evidence for the offense of possession of a controlled substance, which is a violation of the state statutes of the State of Nebraska."

The affiant officer stated that the property being sought in the search warrant was:

> Marijuana, its derivatives and administering instruments, whether homemade or manufactured, possession of which is illegal per Nebraska State Statutes. All monies, records, equipment, materials, keys, electronic storage devices (ie: computers, PDAs, cellular phones, etc.), weapons and ammunition used to conduct illegal narcotics operation. Venue items identifying the occupants of [the subject address].

The affiant officer requested a "No Knock" search warrant because:

> Due to the small amounts of Marijuana being sold and used at [the subject address], Affiant Officer . . . knows from past experience that if officers were to knock and announce their presence and purpose, the evidence being sought could easily be destroyed by flushing it down the toilet, sink and/or by swallowing it.

The county court judge authorized the search warrant, as requested, on November 20, 2014.

Officers executed the search warrant on November 20, 2014, and recovered: venue items for McKnight, a stolen loaded Remington handgun, a .45 caliber 20 round magazine with ammunition, an additional .45 caliber magazine, a box of .40 caliber ammunition, a marijuana roach, loose marijuana, cell phones, additional ammunition and magazines, a rifle, empty gun boxes, and venue items for other individuals. The affiant officer filed a "Return and Inventory" of the search warrant on November 21.

On December 3, 2014, McKnight was charged with possession of a stolen firearm, a Class III felony, in the Douglas County District Court.

On December 19, 2014, McKnight filed a motion to suppress all evidence obtained as a result of the execution of the search warrant. McKnight also moved to suppress all statements he made to law enforcement at the time of the search. In support of his motion, McKnight alleged: (1) the affidavit accompanying the request for the search warrant did not contain sufficient information to establish probable cause to believe a crime or evidence of a crime would be found in the residence, and therefore the search of the residence violated McKnight's constitutional rights; (2) any statements made by him were given without him having been informed of his *Miranda* rights; (3) his statements were the fruits of a custodial interrogation occurring as the direct result of an unlawful search and arrest and as such are "fruits of the poisonous tree"; and (4) the searches of his person and residence were without consent.

A suppression hearing was held on February 6, 2015. The district court noted that the only issue was whether there was probable cause for the search warrant. No testimony was given. The district court received into evidence exhibit 1, which contained the "Affidavit and Application for Issuance of a Search Warrant," the search warrant, the "Return and Inventory," and "The Omaha Police Department Receipt and Inventory."

In an order dated March 27, 2015, the district court granted McKnight's motion to suppress. Citing *United States v. Sumpter*, 669 F.2d 1215, 221 (8th Cir. 1982), the district court found that "[t]he manner in which the marijuana roach and the venue evidence were found is not an issue for this Court" because "police may seize evidence from a defendant's garbage, and the evidence is sufficient to find probable cause, so long as the garbage is seized in an area where sanitation services would regularly collect it." The district court stated that the main issue was whether the evidence itself was enough to establish probable cause for the purpose of obtaining a warrant. The district court stated:

> The criteria for a search warrant is probable cause. The probable cause here is whether there are drugs being sold, not whether there is minimal personal use. Otherwise, what is the relevance of the alleged "constant short term foot and vehicle traffic." That alone is insufficient to achieve probable cause as there was no reliability of this complaint. Unlike with a confidential informant, an individual submitting an anonymous tip has no demonstrable basis of knowledge or veracity. The fact that there is foot traffic at night at Defendant's residence does not in and of itself indicate that Defendant was distributing narcotics in his residence. There could be a host of other reasons for this type of traffic. Thus, without more, the granting of a search warrant would be improper.
>
> The only other evidence of drug use was the trash search, which found .1 of a gram of marijuana. As noted above, .1 gram is 1/300 of an ounce. This Court does not believe that is enough for probable cause of drug activity as required by the U.S. Constitution.

The district court found that such a small amount of marijuana (which according to the court was more indicative of personal use than of narcotic distribution), even in conjunction with the anonymous complaint, was insufficient to provide probable cause for the search warrant.

Accordingly, the district court sustained McKnight's motion to suppress. The State has appealed to one judge of this court.

## ASSIGNMENTS OF ERROR

The State assigns that the district court erred in (1) finding that the Affidavit for the search warrant of McKnight's residence lacked probable cause to justify the issuance of a warrant, and (2) not finding that the execution of the search warrant was pursuant to the officers' good faith reliance on the search warrant.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014). Regarding historical facts, we review the trial court's findings for clear error. *Id*. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id*.

Application of the good faith exception to the exclusionary rule is a question of law. *Id*.

## ANALYSIS

The State argues that the district court erred in finding that the affidavit in support of the search warrant lacked probable cause to justify the issuance of a warrant. More specifically, the State argues that the district court erred in finding that (1) the locating of a marijuana roach in the trash standing alone would not justify the issuance of a search warrant, and (2) that locating the marijuana roach in the trash by law enforcement was not sufficient corroboration of the anonymous tip.

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Nebraska Constitution provides similar protection.

The execution of a search warrant without probable cause is unreasonable and violates these constitutional guarantees. Accordingly, a search warrant, to be valid, must be supported by an affidavit which establishes probable cause. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found.

In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which

emerges after the warrant is issued has no bearing on whether the warrant was validly issued.

*State v. Hill*, 288 Neb. at 777-78, 851 N.W.2d at 687. A magistrate's determination of probable cause to issue a search warrant should be paid great deference by reviewing courts; after-the-fact scrutiny by courts of the sufficiency of an affidavit used to obtain a search warrant should not take the form of a de novo review. *State v. Bossow*, 274 Neb. 836, 744 N.W.2d 43 (2008). However, where the affidavit before the issuing magistrate contains information that an appellate court will not consider in a probable cause determination, the decision of the issuing magistrate is not entitled to such deference, but, rather, must be reviewed de novo. *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003).

*Anonymous Tip.*

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *disapproved in part on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999).

According to the affidavit at issue here, the anonymous complaint advised "there was constant short term foot and vehicle traffic, indicative of narcotics sales, occurring at [the subject address]." It is unclear whether the conclusion that the activity was indicative of narcotic sales was the informer's or the affiant officer's, but in either event this wholly conclusory statement gave the magistrate no factual basis for making a judgment about probable cause. See *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *Flores v. State*, 287 S.W.3d 307 (Tex. App. 2009) *aff'd*, 319 S.W.3d 697 (Tex. Crim. App. 2010). Therefore, we are left with an anonymous complaint of "constant short term foot and vehicle traffic" at the residence.

Although the district court said in its order that the anonymous tip was received on November 19, 2014, and that the foot traffic occurred "at night," that information is not found within the four corners of the affidavit. Lacking in the affidavit is any information as to when the anonymous complaint was received, or when the "constant short term foot and vehicle traffic" was observed in relation to the time of the search warrant's issuance. See *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999) (proof of probable cause justifying issuance of search warrant generally must consist of facts so closely related to time of issuance of warrant as to justify finding of probable cause at that time), *overruled on other grounds, State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000); *State v. Holguin*, 14 Neb. App. 417, 708 N.W.2d 295 (2006). See, also, *United States v. Turner*, 713 F. Supp. 714 (D. Vt. 1989) (the age of the tip could not be determined because the affiant neglected to indicate the date the informant observed the allegedly illegal activity; without this information, the magistrate could not have determined whether the information was stale); *State v. Davila*, 169 S.W.3d 735 (Tex. App. 2005) (affidavit that fails to state when the affiant received the information from the informer, when the informer obtained the information, or when the described conduct took place is insufficient to support issuance of a search warrant).

Furthermore, the affidavit makes no representation whatsoever concerning whether the informant had related personal observations or was relating information received through some other source. A review of the affidavit, rather, leaves the reader to speculate as to where the informant obtained information. As such, the affidavit fails to set forth facts demonstrating the basis of the informant's knowledge. See *State v. Shock*, 11 Neb. App. 451, 653 N.W.2d 16 (2002).

Because the complaint was anonymous, the only way to establish the informant's reliability would be through a police officer's independent investigation. See *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *disapproved in part on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999) (among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given). In the instant case, there was no independent investigation regarding the "constant short term foot and vehicle traffic" at the residence--the officer did not conduct surveillance to verify such traffic.

In sum, in the instant case there is an anonymous complaint regarding "constant short term foot and vehicle traffic." The affidavit does not set forth facts demonstrating the basis of the informant's knowledge of criminal activity, if any, and does not establish the informant's reliability. Furthermore, the affidavit lacked any information as to when the anonymous tip was received, or when the "constant short term foot and vehicle traffic" was observed in relation to the time of the search warrant's issuance; thus, the magistrate could not have determined whether the information was stale. Accordingly, the anonymous tip could not possibly form the basis for a determination of probable cause in the instant case.

*Criminal History.*

For the sake of completeness, I note that the affidavit states that McKnight has a "history of Weapons charges" and is "currently bound over on a Gun charge." A "history of Weapons charges" does not provide any information as to when the charges occurred. See *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999) (proof of probable cause justifying issuance of search warrant generally must consist of facts so closely related to time of issuance of warrant as to justify finding of probable cause at that time), *overruled on other grounds, State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000). Moreover, the statement relates to charges, not convictions. And even the fact that McKnight was "currently bound over on a Gun charge" lacks pertinent information as to what the current charge was for, or how such charge supports a finding of probable cause that drugs would be found in the residence. Accordingly, McKnight's criminal history, as stated in the affidavit, could not possibly form the basis for a determination of probable cause in the instant case.

*Marijuana Found in Trash-Pull.*

Initially we note that McKnight does not challenge the legality of the trash search, which resulted in the discovery of the marijuana roach and venue items; and it is clear that the officers'

retrieval of the garbage in the instant case was done within the scope of the law. See *California v. Greenwood,* 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988) (a person does not have a reasonable expectation of privacy in discarded items deposited in the person's garbage and placed at the curb to be taken by the trash collector).

The State argues that the district court erred in determining that a citation amount of marijuana would not suffice for a probable cause determination for the issuance of a search warrant. After pointing out that the possession of any amount of marijuana is illegal in Nebraska, the State argues:

> There is not a Fourth Amendment requirement for an absolute minimum amount of narcotics to be located in a trash pull to support a finding of probable cause. The only requirement is that that [sic] there be a probability that contraband or evidence of a crime be found in the particular place being sought to be searched. Countless courts have found that "de minimis" amounts (as the District Court described the marijuana roach in this Case) are sufficient to support a probable cause finding. This requirement was met in this Case and, as a result, suppression was not appropriate in this case.

Brief for appellant at 12-13.

We acknowledge that possession of even a minimal amount of marijuana is a crime in Nebraska. See Neb. Rev. Stat. § 28-416(13) (Cum. Supp. 2014) (criminalizing the possession of marijuana, one ounce or less). However, the question is whether a .1 g marijuana roach found in a trash bag, along with venue items for the residence, established probable cause to believe that contraband or evidence of a crime would be found in the residence. A review of relevant case law is necessary.

In *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999), *overruled on other grounds, State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000), Michael E. Johnson argued that the affidavit upon which a search of his home was premised was insufficient for the magistrate to have found probable cause. Johnson was arrested pursuant to a warrant for failure to pay child support. Upon his arrest, the arresting officer searched him and found a small, clear plastic vial on his person which field tests showed to contain methamphetamine. A search of Johnson's vehicle, which he had occupied immediately prior to his arrest, produced a plastic bag containing two small paper packets that the officer suspected to be "snow seals," which, according to the affidavit, were containers commonly used in the sale of controlled substances. The arresting officer, in preparing the affidavit, requested a warrant to search Johnson's home for controlled substances, drug paraphernalia, currency, weapons, and other items "generally associated with illicit drug trafficking." *State v. Johnson*, 256 Neb. at 136, 589 N.W.2d at 112. The affidavit described Johnson's arrest and the seizure of a vial "containing a substance later identified . . . as methamphetamine," *id.*; however, the quantity of the methamphetamine found was not specified within the affidavit. The affidavit also recited the discovery of the snow seals, which the officer characterized on the basis of his training and experience as "an item used for the sale of controlled substances." *Id.* The affidavit stated that the arresting officer was aware from training and experience and from information received from other officers that individuals frequently keep controlled substances on their persons as well as at their residence, and that Johnson was a person

known to have engaged in the use and sale of controlled substances and who had "'previously been convicted of drug charges.'" *Id*. A warrant was issued, and Johnson's residence was searched.

Johnson filed motions to suppress the seized evidence, alleging that the warrant was not supported by probable cause; the motions were overruled, and following his conviction and sentencing, Johnson appealed. The Nebraska Court of Appeals reversed, finding that the affidavit did not establish probable cause because it "contained generalizations about the habits of users and dealers of controlled substances but lacked 'articulable facts . . . to support a finding of probable cause that these generalizations applied to Johnson.'" *Id*. at 138, 589 N.W.2d at 113, quoting *State v. Johnson*, 6 Neb. App. 817, 578 N.W.2d 75 (1998). The Nebraska Supreme Court affirmed the Court of Appeals' decision, analyzing the facts and merits as follows:

> [T]he general statements in the affidavit concerning Johnson's prior conviction and involvement with controlled substances do not provide the temporal nexus necessary to establish probable cause. However, that nexus is present with respect to the methamphetamine and snow seals which were found in Johnson's possession hours before the search warrant was requested. The question, then, is whether these facts establish probable cause to believe that evidence of a crime would be found at Johnson's residence.

*State v. Johnson*, 256 Neb. 133, 144, 589 N.W.2d 108, 116 (1999), *overruled on other grounds, State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000). The *Johnson* court continued its analysis, finding "nothing in the affidavit which would lead to a reasonable inference that Johnson was engaged in the sale of controlled substances at or near the time of his arrest." 256 Neb. at 144, 589 N.W.2d at 117. The court reasoned:

> The general statement that [the affiant arresting officer] was aware of Johnson's previous conviction of "drug charges" would not support such an inference, since there is no indication of the date of the conviction or whether it involved the sale, as opposed to possession, of controlled substances. Likewise, the fact that Johnson was in possession of an unspecified quantity of methamphetamine and three snow seals, described in the affidavit as "[items] used for the sale of controlled substances," provides no basis for inferring that Johnson was a seller of controlled substances, rather than a purchaser. Thus, even if we were to accept the State's premise that incriminating evidence is likely to be found in the homes of drug dealers, the affidavit on its face contains no facts from which it could reasonably be inferred that Johnson was a drug dealer at or near the time of his arrest. For these reasons, the district court's findings of fact upon which it denied Johnson's motions to suppress were clearly erroneous, and the Court of Appeals correctly concluded that [the officer's] affidavit did not establish probable cause to justify the search of Johnson's residence.

*Id*. at 144-45, 589 N.W.2d at 117.

Similar to *Johnson, supra*, the affidavit in the instant case makes reference to an "illegal narcotics operation" and "narcotics sales"; although the instant affidavit also mentions the offense of "possession" (and as we acknowledged above, possession of marijuana in any amount is a crime in Nebraska). In *Johnson*, the Nebraska Supreme Court found that the possession of an

"unspecified quantity" of methamphetamine and three snow seals provided no basis for inferring that Johnson was a seller of controlled substances as opposed to a purchaser. Likewise, in the instant case, a .1 g marijuana roach, without more, is indicative of personal use, not "an illegal narcotics operation" or "narcotics sales." In *Johnson, supra*, the Nebraska Supreme Court found that possession of drugs on Johnson's person, when there was no evidence that he was a drug dealer as opposed to a purchaser, did not provide probable cause to believe that incriminating evidence would be found in his residence. The question in this case is whether a .1 g marijuana roach in the garbage placed at the curb outside the residence provided probable cause to believe that incriminating evidence would be found in the residence. This situation is slightly different than *Johnson* given that the garbage with contraband in this case was in closer proximity to the subject residence than Johnson's person was to his residence in that case. I find that the single marijuana roach in this case, by itself, does not provide probable cause to justify a search of the residence.

In *United States v. Elliott*, 576 F. Supp. 1579 (S.D. Ohio 1984), the affiant officer submitted an affidavit in support of a search warrant based on anonymous citizen complaints and drug evidence found in a trash pull. In his affidavit, the affiant officer stated that "[d]ue to anonymous citizen complaints concerning drug activity," *id.* at 1579, affiant picked up two sealed garbage bags which were abandoned at the curb side in front of Ricky Elliott's residence. A search of the sealed bags revealed "a quantity of partially smoked marijuana cigarettes and several stems from marijuana stalks, portions of which were field tested by affiant and found to test positive for marijuana." *Id.* at 1579-80. The affiant also found venue items in the sealed bags. The affiant stated he also observed several vehicles visit the premises and stay for "only a short period of time which is, to affiant, the normal pattern for drug related activity." *Id*. at 1580. After the warrant was issued, Elliott filed a motion to suppress. The district court found that because there was nothing in the affidavit indicating when the anonymous complaints were received, or the dates of affiant's surveillance, that information could not form the basis for a determination of probable cause. The district court stated that what remained in support of the warrant was the averment as to the fruits of the search of the defendant's garbage, "that is, an unspecified 'quantity of partially smoked marijuana cigarettes and several stems from marijuana stalks.'" *Id.* at 1581. The district court said:

> We conclude that the discovery of the discarded contraband, standing alone, is insufficient to support a determination of probable cause. Despite the prompt action of the agent in seeking the warrant the day after the garbage was examined, the evidence in the garbage did not render the continued presence of marijuana probable. The affidavit does not indicate a large quantity of discarded contraband which might indicate its continued presence in the house. Instead, all we can ascertain is that at least two partially smoked marijuana cigarettes and several stems had left the home at some point in time.
>
> Furthermore, the nature of the evidence is not such that its continued presence in the home is probable. To the contrary, this refuse is merely the waste product of past marijuana use. Moreover, it is unclear when that past use occurred, when the garbage was removed from the house or even when it was scheduled to be picked up. Even assuming weekly garbage collection, the contraband may well have been evidence of marijuana use five days prior to the examination of the garbage. Without corroboration, we cannot say

that this supports a conclusion of the probable presence of contraband on the day of the search.

*Id.*

The district court in *United States v. Elliott*, 576 F. Supp. 1579 (S.D. Ohio 1984), recognized that there were cases in which evidence of drug use discovered in the defendant's garbage contributed to or provided the sole basis for determination of probable cause. See *United States v. Sumpter*, 669 F.2d 1215 (8th Cir. 1982); *United States v. Reicherter*, 647 F.2d 397 (3d Cir. 1981). However, in *Sumpter*, the presence of marijuana in the garbage was accompanied by an anonymous tip received three days prior, and the hearsay statements of the garbage carrier that on the day of the garbage search, several cars had made short stops at the defendant's home during the time it took to collect the refuse in the alley. And in *Reicherter*, although the probable cause rested entirely on the evidence found in the defendant's garbage, the evidence was collected on three separate occasions, thus indicating a continuing presence of contraband in the defendant's home.

The *Elliott* court distinguished the above cases, stating:

Significantly, the instant case involves a single search of the defendant's garbage, an examination that yielded perhaps a small amount of discarded marijuana cigarettes and stems. We do not think that such evidence of a single instance of past use, even in the immediate past, renders the continued presence of contraband reasonably probable.

576 F. Supp. at 1582. In footnote 1, the district court said:

To conclude that such a single instance provides sufficient probable cause for a search warrant would be to subject to a full and probing search, the home of a cocktail party host, whose guests, perhaps unbeknownst to him, indulge in illicit substances and discard the residue. We are not prepared to say that such searches are reasonable within the meaning of the Fourth Amendment.

*Id.* at 1582.

In *United States v. Thurmond*, 782 F.3d 1042 (8th Cir. 2015), the police department received a tip from an informant that "a black male and black female are selling crack cocaine" from a specified address. Officers went to the address and did a "trash pull," collecting 13 trash bags next to the alley behind the residence. One of the bags contained "2 suspected marijuana roaches with green plant material inside that look[ed] and smell[ed] like marijuana, blunt material, blunt paper, 2 baggie knots, cigarillos wrappers," and venue items. *Id.* at 1043. A field test of the suspected marijuana tested positive for THC. The officer conducted surveillance at the residence but saw no activity consistent with the sale of illegal drugs. Police records revealed that Thurmond had been arrested about one month prior for possession of a controlled substance and had a juvenile criminal history including an assault and possession of a controlled substance. The affiant officer stated that there was probable cause to believe that contraband would be found at the residence and a search warrant was issued; a sawed-off shotgun, marijuana, and paraphernalia were seized.

In response to Thurmond's motion to suppress, the magistrate judge and the district court judge found that the warrant was supported by probable cause.

On appeal to the Eighth Circuit, Thurmond argued that the discovery of only a de minimis user quantity of marijuana negates a finding of probable cause. He argued that evidence of a small amount of discarded, past, and undated marijuana use is no cause to search someone's home, and that, at best, there was evidence of a single nonrecurring crime, insufficient to support probable cause for the warrant.

The *Thurmond* court cited to two factually similar cases, *United States v. Briscoe*, 317 F.3d 906 (8th Cir. 2003) and *United States v. Allebach*, 526 F.3d 385 (8th Cir. 2008), in determining that the search warrant issued was supported by probable case. In *Briscoe, supra*, the question was whether the evidence retrieved from the defendant's garbage, standing alone, was sufficient evidence to establish probable cause. It was. The *Briscoe* court held that "the presence of discarded marijuana stems [25] and seeds [40] reasonably suggest[s] that ongoing marijuana consumption or trafficking is occurring [and] the simple possession of marijuana seeds is itself a crime under both federal and state law." 317 F.3d at 908. In *Allebach, supra*, acting on citizen complaints of frequent short-term traffic at a residence, officers searched the defendant's trash bags and found "two plastic bags with white residue, two corners torn from plastic bags, Brillo pads, a film canister with white residue [(which tested positive for cocaine)]," and venue items. 526 F.3d 386. Challenging the sufficiency of probable cause supporting the search warrant, the defendant argued that the materials from his trash did not support a finding of probable cause. Relying on *Briscoe,* the *Allebach* court had "little hesitancy in concluding a reasonable magistrate would conclude the materials found in the trash . . . were sufficient to establish probable cause that cocaine was being possessed and consumed in Allebach's residence." *United States v. Allebach*, 526 F.3d at 387.

The court in *United States v. Thurmond*, 782 F.3d 1042 (8th Cir. 2015), found that Thurmond's earlier arrest for possession of a controlled substance and his juvenile history with controlled substances, along with the items found in the trash bags, were sufficient to lead a prudent person to believe that there was a fair probability that contraband would be found in the residence. In addressing Thurmond's argument that a de minimis quantity of marijuana negates probable cause, the *Thurmond* court found that "each analysis of probable cause, on some level, requires 'line-drawing' based on the totality of circumstances unique to each case." *Id.* at 1045. And the *Thurmond* court determined that "this case falls on the side supporting probable cause." *Id*.

In the instant case, I have already determined that the anonymous tip and McKnight's criminal history were insufficient to support a finding of probable cause. The only remaining evidence was a single marijuana roach--there were not numerous marijuana seeds and stems, nor was additional drug paraphernalia found in the trash. The .1 g marijuana roach was evidence of nothing more than a one-time past use and, standing alone, does not render the continued presence of contraband reasonably probable. See *United States v. Elliott*, 576 F. Supp. 1579 (S.D. Ohio 1984). As noted by the court in *Thurmond, supra*, each case requires "line-drawing" based on the totality of the circumstances, and I find that this case does not fall on the side supporting probable cause. In sum, the district court properly found that the affidavit in support of the search warrant, viewed in its totality, does not set forth probable cause to support issuance of a search warrant.

*Good Faith Exception.*

Even though the search warrant was not supported by an affidavit establishing probable cause, the next question is whether the evidence obtained as a result of the warrant is admissible pursuant to the good faith exception to the search warrant requirement. The district court did not make a determination on the applicability of the good faith exception to the warrant requirement set forth in *United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

In *State v. Tompkins,* 272 Neb. 547, 723 N.W.2d 344 (2006), *modified on denial of rehearing* 272 Neb. 865, 727 N.W.2d 423 (2007), the Nebraska Supreme Court held that the *Leon* good faith exception could not be raised by an appellate court on its own motion, because doing so precludes the defendant from defending against application of the exception. The court found that the State has ample opportunity to raise the issue on appeal and that requiring the State to do so "does not place an onerous burden on the State," because "the inquiry into good faith normally involves an examination of the same facts as the probable cause inquiry." *Id.* At 553, 723 N.W.2d at 349.

In the instant case, the State has raised the *Leon* good faith exception on appeal and, therefore, I find that the issue is properly before me. Thus, I proceed to consider whether the *Leon* good faith exception is applicable.

> The good faith exception provides that even in the absence of a valid affidavit to support a search warrant, evidence seized under the warrant need not be suppressed when police officers act in objectively reasonable good faith in reliance upon the warrant. [Citations omitted.] In assessing an officer's good faith in conducting a search under a warrant, an appellate court must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit. [Citation omitted.] Evidence may be suppressed if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth, (2) the issuing magistrate wholly abandoned his or her judicial role, (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid. [Citation omitted.]

*Tompkins,* 272 Neb. at 550, 723 N.W.2d at 347.

In *State v. Reeder*, 249 Neb. 207, 543 N.W.2d 429 (1996), *overruled on other grounds, State v. Davidson,* 260 Neb. 417, 618 N.W.2d 418 (2000), the Nebraska Supreme Court considered whether evidence seized pursuant to an invalid search warrant was admissible pursuant to the *Leon* good faith exception to the exclusionary rule. The court held that where the information in the affidavit failed to set forth the informants' reliability, and where other information alleged in the affidavit was stale, it was entirely unreasonable for the officer to believe that probable cause existed to support the issuance of the warrant.

Like the affidavit in *Reeder*, the affidavit in the instant case lacks any information pertaining to the reliability of the anonymous complainant, and there was insufficient

corroboration by independent investigation. Furthermore, the affidavit lacked any information as to when the anonymous tip was received, or when the "constant short term foot and vehicle traffic" was observed in relation to the time of the search warrant's issuance; thus, the magistrate could not have determined whether the information was stale.

As stated previously, the affidavit states that McKnight has a "history of Weapons charges" and is "currently bound over on a Gun charge." However, the affidavit lacks any information as to when these "Weapons charges" occurred; thus, the magistrate could not have determined whether the information was stale for purposes of issuing the current search warrant. Furthermore, the statement relates to charges, not convictions. And as stated previously, even the fact that McKnight was "currently bound over on a Gun charge" lacks pertinent information as to what the current charge was for, or how such charge supports a finding of probable cause that drugs would be found in the residence. Accordingly, McKnight's criminal history, as stated in the affidavit, could not possibly form the basis for a determination of probable cause in the instant case.

Without the anonymous tip and McKnight's criminal history, the only information within the four corners of the affidavit upon which the warrant could be based was the .1 g marijuana roach retrieved from the trash pull. When evaluating whether the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, an appellate court should address whether the officer, considered as a police officer with a reasonable knowledge of what the law prohibits, acted in objectively reasonable good faith in relying on the warrant. *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014). An officer with reasonable knowledge of what the law prohibits should know that finding a .1 g marijuana roach in the garbage, without more, would not establish probable cause to believe that more contraband would be found in the residence. Accordingly, it was entirely unreasonable for the officer to believe that probable cause existed to support the issuance of the warrant and to thereafter rely on the same.

I do not believe it was the affiant officer's intent to execute or rely on an invalid search warrant. However, because the anonymous tip and McKnight's criminal history had to be removed from consideration, the .1 g marijuana roach found in the garbage, without more, made it objectively unreasonable to believe that more contraband would be found in the residence. Accordingly, the good faith exception to the search warrant requirement is not applicable under the circumstances of this case.

CONCLUSION

I affirm the decision of the district court granting McKnight's motion to suppress all evidence obtained as a result of the execution of the search warrant of the subject address for the reasons discussed above.

AFFIRMED.